[Filed January 18, 1892.]

## A. E. CURRIE *v.* THE SOUTHERN PACIFIC CO.

LEGISLATURE— ENACTMENT OF LAWS— ERRORS SHOWN BY JOURNALS.— Where a bill has been regularly enrolled, signed by the presiding officers of the two houses of the legislative assembly, approved by the governor, and filed with the secretary of state, it will be held a valid law unless the journal of one of the houses affirmatively show that some condition imposed by the constitution on the enactment of laws has not been observed.

APPEALS TO CIRCUIT COURT— AMENDMENT OF PLEADINGS.— On appeal from a justice's court, it is error for the circuit court to allow any amendment of the pleadings which introduces a new cause of action or defense not in the pleadings on which the case was heard before the justice's court.

Linn county: R. P. BOISE, Judge.

Defendant appeals. Reversed.

This action was commenced in a justice's court. The material parts of the complaint are as follows: "That at all times hereinafter mentioned defendant was and now is a corporation duly incorporated under the laws of the state of Kentucky; that at all the times hereinafter mentioned defendant was engaged in operating, running, and conducting a railroad, running north and south through Linn county, Oregon, and known as the Southern Pacific Company; that on the eighth day of March, 1891, the plaintiff was the owner of one bay work horse, six years old, of the value of one hundred and eighty dollars; that on said eighth day of March, 1891, said horse, without any fault of plaintiff, went upon the railroad track of defendant near the city of Albany, Linn county, Oregon; that the defendant, by its agents and servants, in running and managing a locomotive and train of cars then upon said railroad track, and disregarding their duty in that respect, so carelessly and negligently ran and managed said locomotive and train of cars on said track that they ran said locomotive and train of cars against and over and killed said horse of plaintiff to plaintiff's damage in the sum of one hundred and eighty dollars; that at said place where said horse was killed by defendant's locomotive and cars, the

said railroad track of the defendant was open and unfenced and not inclosed in any manner."

The answer, after admitting the corporate existence of the defendant, denies each of the other allegations of the complaint, and contains new matter as follows: "And defendant, for a separate defense herein, alleges that the place where said horse is alleged to have been killed was within the incorporated limits of the said city of Albany, and that the said city of Albany had, long prior to the time of the alleged killing of said horse, prohibited and declared by ordinance of said city, that it was unlawful for the owner of any live stock, horse, horses, or cattle, to suffer or allow them to run or be at large within the said city limits, and making punishable by fine or imprisonment any violation of said ordinance; that said ordinance was at the time of the alleged killing of said horse and still is in full force and effect, which said ordinance is entitled, 'An ordinance concerning offenses and disorderly conduct, defining what shall constitute the same, and providing for the punishment thereof,' approved by the mayor of said city on the thirteenth day of May, 1887, and is hereby referred to and made a part of this answer; that at the time of the alleged killing of said horse, he was by reason of the carelessness and negligence of the plaintiff, and in violation of the said ordinance, running loose and at large within said city limits of the said city of Albany, and that whatever injury happened to said horse at the time and place alleged, was on account thereof and was caused by reason thereof, and not otherwise.

"And for another defense herein the defendant alleges that the portion of the track of the defendant's railroad mentioned in the complaint as the place where said horse is alleged to have been killed, was and is within the incorporated limits of the city of Albany; that neither the act incorporating said city nor any of the amendments thereof or any of the ordinances of said city contain any provision requiring the defendant to fence its track within said city

limits, although the charter of said city invested the common council thereof with full power to regulate and control the use of streets and highways within said city limits for railroad and other purposes." After alleging some other immaterial matter, the answer contains the allegation, that said horse was killed without any fault or negligence on the part of the defendant.

The plaintiff demurred to each separate defense contained in this answer upon the ground that neither defense contained facts sufficient to constitute a defense, which demurrer was sustained by the justice of the peace. A trial before the justice resulted in a judgment in favor of the plaintiff, from which an appeal was duly taken to the circuit court.

Before proceeding to try any question of fact presented by the record, the circuit court tried the questions of law presented by the demurrers to the separate defenses contained in the defendant's answer, and gave judgment reversing the ruling of the justice of the peace on said demurrers. The plaintiff then asked and obtained leave to file a reply to said separate defenses. After denying the same, the reply contained the following new matter: "The plaintiff for a further and separate reply to the new matter in the defendant's further and separate answer, alleges that at the time said horse was killed as alleged in plaintiff's complaint herein, it was unlawful for any person, corporation or company, to run or cause to be run, any locomotive or car within the corporate limits of the city of Albany at a greater rate of speed than six miles an hour, which said ordinance is entitled, 'An ordinance concerning offenses and disorderly conduct, defining what shall constitute the same, and providing for the punishment thereof,' approved by the mayor of said city on the thirteenth day of May, 1887, and is hereby referred to and made a part of this reply; that at the time, the locomotive drawing the train which killed the horse, as alleged in plaintiff's complaint, was running at a greater rate of speed than six

miles an hour, to-wit, at the rate of forty miles an hour in violation of the laws of said city of Albany made and approved; and that by reason thereof the defendant so negligently ran upon and over said horse of plaintiff without any fault of plaintiff.

"The plaintiff for a further and separate reply to the defendant's new matter set up in its further and separate defense, alleges that the plaintiff's horse escaped from plaintiff's barn by accident a short time prior to the time it was run over and killed by the defendant's engine; that said horse escaped without any fault or negligence of plaintiff and was killed as alleged in plaintiff's complaint."

The defendant then moved to strike out and from the files of the court the plaintiff's reply, for the reason no reply was filed and no issue was made or tried in the justice's court to or about the separate defenses and answer of the defendant, and because the plaintiff is not entitled to make and file any reply or make any issue thereon in the circuit court, which motion the court overruled.

The defendant then filed a demurrer to the reply upon the grounds, first, that said further and separate reply does not state facts sufficient to constitute a defense to the answer of defendant; second, said new matter in the reply should have been stated in the complaint herein, and the same is a departure from the cause of action set up in said complaint, which demurrer was also overruled by the court.

A trial resulted in a verdict and judgment for the plaintiff from which the defendant has appealed.

*A. H. Tanner*, for Appellant.

*J. K. Weatherford*, for Respondent.

STRAHAN, C. J.—The first question to be determined is whether or not the circuit court had the power to permit a reply to be made in that court for the first time. If such power exist, it must be found in the justice's code and not elsewhere. (*Odell* v. *Gotfrey*, 13 Or. 466.) But we must first determine what constitutes the justice's code.

The acts of the legislature of 1885, 136, contain what purports to be a law enacted at that session. It is entitled "An act to further simplify proceedings in justice's courts, and to repeal chapter IV of the justice's code, being part of an act entitled 'An act to regulate the civil and criminal procedure in justice's courts,' and also to repeal section 80 of chapter IX of the justice's code." Section 7 of this act is undoubtedly comprehensive enough to enable the circuit court on appeal to allow or require formal pleadings even when none had been filed before. We must, therefore, consider whether or not it is law. This act is compiled in Hill's code, §§ 2059, 2060, 2072, 2073, 2074, 2127, and 2130. The enrolled copy in the office of the secretary of state bears the signatures of the presiding officers of the two houses and the approval of the governor; but the journal of the senate, however, fails to show its passage.

Section 13 of article IV of the constitution provides: "Each house shall keep a journal of its proceedings. The yeas and nays on any question, shall, at the request of any two members, be entered, together with the names of the members demanding the same, on the journal; *provided*, that on a motion to adjourn, it shall require one-tenth of the members present to order the yeas and nays." And section 19 of the same article is as follows: "Every bill shall be read by sections, on three several days, in each house, unless in case of an emergency two-thirds of the house where such bill may be depending, shall, by a vote of yeas and nays, deem it expedient to dispense with this rule; but the reading of a bill by sections on its final passage shall in no case be dispensed with, and the vote on the passage of every bill or joint resolution shall be taken by yeas and nays."

In this country the authorities are not uniform as to the power of the courts to look behind a bill regularly enrolled and signed; but both the weight of authority as well as the reason of the rule seem to sustain the power of the courts to look into the journals of the legislative assembly under

such constitutional requirements as exist in this state. (*Vide* the elaborate note to *Jones* v. *Jones*, 51 Am. Dec. 611; 12 Pa. 350, where many authorities on each side of the question are collated.)   Without undertaking to reconcile the conflict between the various adjudged cases, it may be stated generally that where a bill has been regularly enrolled, signed by the presiding officers of the two houses, approved by the governor, and filed with the secretary of state, and the mere silence of the legislative journals or their failure to show affirmatively that some requirement of the constitution was not complied with in its enactment, would not be sufficient to overthrow such enactment.   But when the journals show upon their face that said bill did not receive the requisite vote upon its final passage, and for that reason did not pass, it is difficult to see how the official signatures could give it the force and effect of law.

Judge Cooley in his work on Constitutional Limitations, page *135, thus states the rule:   "If it should appear from these journals that any act did not receive the requisite majority, or that in respect to it the legislature did not follow the requirement of the constitution, or that in any other respect the act was not constitutionally adopted, the courts may act upon this evidence and adjudge the statute void.   But whenever it is acting in the apparent performance of legal functions, every reasonable presumption is to be made in favor of the action of the legislative body; it will not be presumed from the mere silence of the journals, that either house has exceeded its authority, or disregarded a constitutional requirement in the passage of legislative acts, unless where the constitution expressly required the journals to show the action taken, as, for instance, where it requires the yeas and nays to be entered." (*People ex rel.* v. *Starne*, 35 Ill. 121; 85 Am. Dec. 348, and note.)

The act in question was known as house bill No. 5, and was introduced first, and then under a suspension of the rules was read a second time and referred to the judiciary committee. (House Journal, 23.) It was reported from

the committee with amendments, which were concurred in. (House Journal, 235.) And it passed the house by the requisite majority. (House Journal, 261.) It went to the senate, where it passed through all the requisite forms until it was put upon its final passage, when it received 13 ayes to 11 nays. There were five absent and one senator was excused. " So the bill failed to pass." (Senate Journal, 527.) It thus appears from the vote recorded in the journal by the recital therein that house bill No. 5 did not receive the requisite vote upon its final passage, and therefore never became law.

This conclusion leaves the justice's code as it stood prior to this attempted change. This leaves section 80 still in force. That section is as follows: " The appellate court may in furtherance of justice, and upon such terms as may be just, allow the pleadings in the action to be amended so as not to substantially change the issues tried in the justice's court, or introduce any new cause of action or defense."

It would be conceded at once that the filing of the reply did change issues tried in the justice's court in a most material and essential particular. The issue tried in the justice's court on the pleadings was one of law arising upon the plaintiff's demurrer to the new matter in the defendant's answer. Having been defeated on that issue in the appellate court, that court was without power to permit new issues to be formed and then tried for the first time.

No doubt it would prove more convenient in practice if the circuit court were given the same power over the pleadings in an action removed by appeal into that court which it has in an action originally commenced there, but the legislature has seen proper not to confer it, and the same cannot, therefore, be exercised.

In *Moses* v. *The S. P. Co.* 18 Or. 385, we had occasion to consider the rule of liability of a railroad company for killing stock at a place where the company is not required to fence,

which renders a re-statement of the law on that subject unnecessary.

For the reason that the circuit court allowed a reply to be filed to the new matter in the answer, presenting issues which were not in the case in the lower court, the judgment must be reversed, and the cause remanded to the court below for such proceedings as may be proper, not inconsistent with this opinion.

BEAN, J.—The question decided in this case was not argued at the hearing, but in our investigation became necessary to its decision; and while there is much conflict as to the right of the court to examine the journals of the legislature for the purpose of impeaching the validity of the enrolled act, as certified to by the presiding officers of the two houses, approved by the governor, and filed in the office of the secretary of state (*State* v. *Swift*, 10 Nev. 176; 21 Am. Rep. 721), as at present advised, I concur in this opinion, however with some hesitation.

LORD, J., expressed no opinion, but reserved his judgment.