Argued June 5; affirmed June 25; petition for rehearing stricken
from the files September 10, 1940

# WOODWARD *v.* PEARSON

(103 P. (2d) 737)

*Louis E. Schmitt*, of Portland, for appellant.

*Francis T. Wade*, Assistant Attorney General (I. H. VanWinkle, Attorney General, on the brief), for respondent.

*Allan G. Carson*, of Salem, amicus curiae.

KELLY, J. By this suit, plaintiff, a citizen, property owner and taxpayer of Oregon, challenges the constitutionality of chapter 460, Oregon Laws 1939, pp. 907, et seq. This measure is entitled, "An act to provide for the codification, publication and distribution of the codes and statutes of the state of Oregon; making an appropriation therefor; and declaring an emergency." From an order sustaining a demurrer to plaintiff's complaint and dismissing it, plaintiff appeals.

Five grounds are given in support of plaintiff's contention that the act in question is invalid.

The first of these grounds is that chapter 460, supra, was not legally passed or adopted by the legislature; and the mandatory provisions of the constitution have not been observed in the enactment.

In plaintiff's complaint it is alleged:

"III.

That the Senate and the House of the Legislative Assembly of Oregon, in its 1939 Session, passed al-

leged H. B. 494, as amended, appropriated $65,000 for publication of a Code, and as such it was signed by the President of the Senate, Speaker of the House, and on the 21st of March 1939, it was approved and signed by the Governor of the State of Oregon, and is alleged Act, Chapter 460, of Oregon Laws 1939, however, in fact, no such Bill had been introduced in the Senate or House.

### IV.

That prior to the passage of said purported H. B. 494, the Senate and House appointed conferees on said alleged House Bill, and thereafter the Senate and House adopted an alleged conferees report, which provided, among other amendments, the following: to strike out the figures $65.00, in the two separate places in paragraph (3) of said H. B. 494, and insert in lieu thereof the figures $62.50; to strike out the figures $35,000 in paragraph (5) thereof, and insert in lieu thereof the figures $31,250; and to strike out the figures $65,000 in paragraph (5) thereof and insert in lieu thereof the figures $62,500.

### V.

That when said House and Senate passed said purported H. B. 494, as amended, it omitted therefrom the amendments of the said conferees report as above mentioned, but included all the other amendments in said conferees report, and it was so enrolled, passed and adopted as aforesaid, and by reason thereof said alleged Act, Chapter 460 of the Oregon Laws of 1939, is void, invalid, and of no force and effect.''

■ In the case of a house bill, which has been amended by the house, the original bill and its amendments are delivered to the chairman of the house committee on engrossed bills for engrossment. The engrossed bill, which is merely a redaction of the original bill and its amendments, is sent to the senate. If amendments are made in the senate, the engrossed bill, together with the endorsements thereon showing the

course taken and the senate amendments, is sent to the house; if the senate amendments are adopted by the house and the measure passed as thus amended, the house committee on enrolled bills receives the engrossed bill and amendments and makes a redaction therefrom which is the enrolled bill. This enrolled bill is signed by the speaker of the house and the president of the senate and transmitted to the governor. The amendments omitted from the enrolled bill in suit were those recommended by the third joint conference committee appointed after failure of the two houses to agree upon amendments theretofore-recommended. The question here presented is whether, in the absence of any record in explanation of this omission, the act is invalid. The question is not a new one in this jurisdiction. In an opinion by Mr. Justice HARRIS, exhaustively treating the authorities upon the question, the rule is stated thus:

"Every reasonable presumption is to be made in favor of the regularity of legislative proceedings. If the Constitution does not require a given proceeding to be entered in the journal, the absence of a record in the journal will not invalidate a law. It will not be presumed from the mere silence of the journal that either house has exceeded its authority or disregarded constitutional requirements in the passage of legislative acts: Currie v. Southern Pacific Co., 21 Or. 566, 571, (28 Pac. 884); State v. Rogers, 22 Or. 348, 364, (30 Pac. 74); Portland v. Yick, 44 Or. 439, 442 (75 Pac. 706, 102 Am. St. Rep. 633); Emmons v. Southern Pacific Co. 97 Or. 263, 274 (191 Pac. 333)." *Boyd v. Olcott, et al.,* 102 Or. 327, 360.

In an earlier case, this court, speaking through the late Mr. Justice ROBERT S. BEAN in reference to a similar record, said:

"Mere silence of the journal is not sufficient. Within this rule, we think the act in question must be regarded

as valid. It nowhere appears in the journal that it did not pass in the form as actually signed by the presiding officers, and now on file in the office of secretary of state. It is true, the journals show that in its progress through the legislature an amendment was adopted which is not included in the enrolled act, but the vote by which such amendment was adopted may have been reconsidered, and the amendment defeated. At least, the courts are bound to presume such to have been the case. The enrolled act as filed by the secretary of state is signed by the officers of the house and senate required by the constitution to sign all bills and joint resolutions passed by their respective bodies, and is therefore officially attested in the manner required by the organic law as one that has regularly and duly passed the legislature, and this attestation must prevail, unless the contrary conclusively appears by the journals of their proceedings: State v. Francis, 26 Kan. 724. The constitution requires all bills and joint resolutions to be signed by the presiding officers of the respective houses (section 25, article IV), and their signatures must be given full force and effect, and import absolute verity, unless affirmatively contradicted by the journals which the constitution requires to be kept.'' *McKinnon v. Cotner,* 30 Or. 588, 592, 49 P. 956.

■ The contention that the act in question is invalid because of the omission mentioned is not tenable.

In his printed brief, plaintiff's second ground for urging that the act in question is invalid, is stated thus:

''The Legislative Department violated the Constitution of Oregon, when it delegated its powers and functions to the Judicial Department, by directing the Supreme Court of the State of Oregon to enter into a contract forthwith, with a responsible law publishing house, to publish and print a Code, etc., at a cost of $65,000, and further delegated to the Supreme Court discretionary and determinative powers in compiling and publishing the Code, etc. The powers and functions

so delegated are purely nonjudicial in character, and are beyond the powers limited to Supreme Court by the Constitution.''

On this point, plaintiff cites Article III, Oregon Constitution, which is as follows:

''§ 1. Powers of Government. The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided.''

Plaintiff also cites section 6, Article VII of the Constitution. This must refer to the original Article VII, for the amendment comprising Article VII, section 6, adopted in 1910 is not pertinent to any issue herein. Section 6, of the original Article VII, is as follows:

''§ [6] Jurisdiction of Supreme Court. The Supreme Court shall have jurisdiction only to revise the final decisions of the circuit courts; and every cause shall be tried, and every decision shall be made by those judges only, or a majority of them, who did not try the cause or make the decision in the circuit court.''

■ The foregoing constitutional provisions, cited by plaintiff, must be construed in the light of subsequent amendments.

Section 4 of Article VII of the Constitution, as amended in 1910, contains the following mandate prescribing a specific duty upon the judges of the supreme court thus: ''And at the close of each term the judges shall file with the secretary of state concise written statements of the decisions made at that term.''

■ We think that inherently this court may supervise and edit any legally authorized epitome, digest, annotation or codification of the written opinions it is re-

quired under the foregoing constitutional mandate to render. Inherently, this court may contract for the stationery necessary for the preparation of its written opinions, otherwise, in the event of a failure or refusal of the legislative department to provide such supplies, the court could not constitutionally function.

■ It is unthinkable that only the legislative department may control future editing of the law as expressed in the written opinions of the court of last resort. Applying this palpable principle to the case at bar, we have but to bear in mind the further fact that a large part of every annotated compilation of statutory law consists of digested material purporting to reflect the holdings of the courts of last resort.

Whether the members of such a court are qualified, as in the present case the legislature evidently thought they were; whether such work is judicial, legislative or administrative, it is impliedly authorized by the constitutional provision requiring the rendition of written opinions and is an inherent right and prerogative of the court.

Could it be said that this court could not contract for a typewriter or half a dozen of them, for stationery or for necessary office equipment? Plaintiff's position is that the making of a contract is an administrative function; but he overlooks the inherent prerogative of a court with respect to its own constitutionally imposed duty of rendering written opinions.

Sixteen sections of the article on Constitutional Law in Vol. 6 R. C. L. 146, being sections 144-160 thereof, are also cited by plaintiff in support of his second ground for arguing that the act in question is invalid. We are unable to analyze the portions of this citation favorable to plaintiff's position, for the reason

that there is so much therein which distinguishes the broad principle involved from the approved procedure, followed in many cases, that the sections cited, when considered together, appear to reflect a correct statement of the law. To illustrate this, we venture to quote a portion of section 146, ibid:

"146. Blending of Powers in Certain Respects. While the true meaning of the principle seems to be that the whole power of one department should not be exercised by the same hands which possess the whole power of either of the other departments, and that the doctrine should be applied only to the powers which because of their nature are assigned by the constitution itself to one of the departments exclusively, it does not necessarily follow that an entire and complete separation either is desirable or was ever intended. Accordingly the doctrine as to the separation of the powers of government has never been strictly applied to all the ramifications of national government."

The same may be said of plaintiff's citations to 12 C. J. 873, § 376, and 16 C. J. S. 500, §§ 162-165.

These broad and comprehensive citations remind us of labels said to have been used by an old lady to designate which of her canned supplies was mince meat. That which was mince she labeled T. M. meaning "Tis mince" and the other cans were labeled T. M. meaning "Taint mince."

Plaintiff also cites the case of *Anway v. Grand Rapids R. Co.*, 211 Mich. 592, 179 N. W. 350, 12 A. L. R. 26. This is a case involving the validity of a declaratory judgment statute.

*Udall v. Severn*, 52 Ariz. 65, 79 P. (2d) 347, also cited by plaintiff, involves the validity of a statute providing a proceeding in court for annexation of territory to a city. It is there held that in so far as the

court's ultimate action in determining whether territory should be annexed to a municipality is made to depend upon unfettered discretion as to whether, politically and economically speaking, it is advisable that the annexation be made, the function is purely legislative in its nature and cannot be delegated to the judicial department. The statute under consideration in the case at bar is replete with restrictions upon the character of the contract authorized by the legislature, and in no sense can it be said that the ultimate action thereon depends upon the unfettered discretion of the court.

The case of *Abbott v. McNutt*, 218 Cal. 225, 22 P. (2d) 510, 89 A. L. R. 1109, also cited by plaintiff, is a mandamus proceeding to require judges of the superior court to serve upon a board whose sole duty was to consider the qualifications of applicants for the position of county executive and to submit a list of those found qualified to the board of supervisors. There, the charter provision, prescribing such service, required that such board should continue to solicit and select and submit to the board of supervisors lists of qualified candidates for the office of county executive until such time as the board of supervisors should determine upon an appointee for that office.

The supreme court of California, among other things, held:

"It is conceivable that this duty may so consume the time of the respondent judges as to seriously embarrass, if not in fact impede, the orderly and proper discharge of their judicial functions."

No such consideration attends the instant case. Besides in the California case just mentioned, it was held that service upon the qualification board, even though

spasmodic and occasional, would constitute such other "public employment" within the meaning of the constitutional provision as might reasonably tend to prove incompatible with the due and proper discharge by the respondents of their judicial functions. The distinction between the Abbott-McNutt case and the case at bar is obvious.

*In re Appointment of Revisor,* 141 Wis. 592, 124 N. W. 670, 18 Ann. Cas. 1176, also cited by plaintiff, holds a statute constitutional providing for the appointment of a revisor of the statutes by the State Library Trustees, who are the justices of the supreme court and the attorney general, and authorizing them to fix the revisor's salary within a specified limit, and approve the appointment of the revisor's assistants and the printing of any compilation of the statutes, index or notes ordered by the legislature. Plaintiff refers to the dissenting opinion; but we think the better reasoning is found in the opinion of the majority.

The case of *State v. Baker* (North Dakota) 288 N. W. 202, also cited by plaintiff, deals with a state of facts quite similar to those here involved. The members of the supreme court, deeming themselves disqualified, secured the services of five district judges, who heard and decided the case. Two of these judges upheld the statute as constitutional, except section 9 thereof; and three of the judges held the entire act to be unconstitutional.

The constitution of North Dakota in section 89 thereof, as amended, provides:

"That in no case shall any legislative enactment or law of the state of North Dakota be declared unconstitutional unless at least four of the judges shall so decide."

By reason of this constitutional provision, the decision of the two judges became the prevailing opinion.

Section 96 of the constitution of North Dakota provides:

"No duties shall be imposed by law upon the Supreme Court or any of the judges thereof, except such as are judicial, nor shall any of the judges thereof exercise any power of appointment except as herein provided."

The constitution of Oregon has no such provision. The dissenting opinion in *State v. Baker,* supra, held that the power of appointment of a code revision commission could not be conferred upon the court as provided in the act without violating the above quoted provisions of the North Dakota constitution.

■ With due respect for the North Dakota jurists, who held the law unconstitutional, we think the prevailing opinion reflects the better reasoning. It is a recognized principle that, unless the unconstitutionality of a statute is shown beyond a reasonable doubt, the statute should be held to be constitutional and valid.

On October 11, 1862, the Legislative Assembly of Oregon adopted, except as to two unimportant amendments, a code of civil procedure, which had been prepared and reported to the legislative assembly that met September 8, 1862, by a commission, theretofore selected by legislative enactment, consisting of James K. Kelly, A. C. Gibbs and M. P. Deady.

On October 21, 1864, the legislative assembly passed an act authorizing and requiring the governor to appoint a suitable commissioner to codify the general laws of Oregon. Hon. Matthew P. Deady was appointed as such commissioner and in 1866 produced the compilation known as Deady's Compilation, 1845-1864.

In 1872, an act was passed by the legislature appointing Matthew P. Deady and Sylvester C. Simpson to codify the general laws. Soon after the compilation was commenced, Mr. Simpson resigned from the commission and the governor appointed Lafayette Lane in his place. In 1874, the Deady and Lane compilation was completed.

On February 26, 1885, an act was passed authorizing the secretary to purchase one thousand copies of the annotated laws of Oregon, collected, compiled and annotated by W. Lair Hill, and providing for the authentication of the same by the governor. Section 4 of this act being as follows:

"Sec. 4 [5] From and after the time when said compilation shall be examined and certified by the Governor as hereinbefore provided, it shall be in force and shall be received in all the courts of the State as an authorized compilation of the statute(s) of Oregon." Gen. Laws of 1885, p. 143.

This compilation was produced in July, 1887, and certified by the governor on August 9, 1887. A second edition of this compilation was published in 1892.

Pursuant to an act of the legislature approved February 25, 1901, authorizing the purchase of one thousand sets of a revised and annotated code and general laws of Oregon by Hon. C. B. Bellinger, United States District Judge for the state of Oregon, and W. W. Cotton, these gentlemen produced Bellinger and Cotton's Annotated Codes and Statutes of Oregon. This compilation included the laws enacted in the legislative session of 1901.

An act approved March 17, 1909, authorized the the justices of the supreme court, or a majority thereof, to appoint a competent person to compile, annotate and

superintend the publication of the codes and statutes of Oregon. That act also provided that the justices of the supreme court, or a majority thereof, fix the compensation of the person so appointed by them and that of his necessary clerical assistance. Thus in 1910, Lord's Oregon Laws, compiled and annotated by Hon. William Paine Lord, Code Commissioner, and Richard Ward Montague of the Portland bar, made its appearance.

Pursuant to legislation similar to that last hereinbefore mentioned, Hon. Conrad Patrick Olson compiled Oregon Laws 1920.

In accordance with an act of the legislature passed in 1929 [General Laws of Oregon 1929, Chap. 418, p. 585, et seq.], very similar to that which we are called upon to consider in the instant case, the Oregon Code 1930 was produced and published.

Thus it will be seen that, from the time Oregon became a state until the present, the compilation, annotation and codification of its laws at intervals of ten years or less have been intimately related to and participated in by the members of the judicial department of the government and of the state. Hon Matthew P. Deady, while serving upon the federal court, pioneered in that realm. Hon. Charles B. Bellinger, while United States District Judge for Oregon, contributed his valuable services therein. Hon. William P. Lord and Hon. Conrad P. Olson, former justices of the supreme court, each, at different times, accepted an appointment from this court and served as code commissioner thereunder in the preparation and publication of the respective compilation hereinabove attributed to him.

That these learned judges and honored public servants found no constitutional impediment to such a course leaves no reasonable doubt as to its propriety and validity.

■ The third ground for plaintiff's attack upon the statute in question is his objection to the provision therein to the effect that when the code shall have been published, one set thereof shall be delivered to each member of the legislature. It is argued that this constituted additional compensation, and, therefore, it is a violation of Article IV, section 29 of the Oregon Constitution, which provides that, except the presiding officers thereof, the members of the legislative assembly shall receive for their services a sum not exceeding three dollars a day and that the presiding officers shall receive an additional compensation equal to two-thirds of their per diem allowance as members. It will be noted that nothing is indicated therein which forbids the legislature from supplying its members with the codes, statutes, session laws, senate and house journals. Plaintiff says that it is well known that each member of the legislature at every session receives the latest code and general laws. We think that the propriety of supplying them to such members is within the discretion of the legislature and that there is no constitutional inhibition against it.

In every instance since the code of civil procedure in 1862, the act authorizing the purchase by the state of a stated number of copies of a proposed new compilation of the general laws has contained a provision that a set thereof shall be delivered to each member of the legislature. Deady's Code, 1845-1864, p. 136; Laws of 1872, p. 71; Laws of 1885, p. 142; Laws of 1901, p. 117 at 118; Laws of 1909, p. 517 at 519; Chapter

266, Laws of 1919, 439, at p. 440; Laws of 1929, Chapter 418, p. 585, at p. 586.

The fourth ground upon which plaintiff bases his contention, that the act in question is unconstitutional, is stated thus:

"The Constitution provides for laws to be enacted for state printing and binding, and pursuant to said constitutional provision, the legislature enacted such laws and the legislature contravened the constitution and laws of Oregon when it delegated to the supreme court the power and authority to enter into a contract for printing and binding the 1940 code, etc."

In support of this statement, plaintiff cites Article XII, section 1, Constitution, and §§ 68-2201 to 68-2216, O. C.

Article XII of the Constitution, as amended June 4, 1906, is as follows:

"§ 1. Election, qualifications, duties, compensation, etc.—Laws may be enacted providing for the state printing and binding, and for the election or appointment of a state printer, who shall have had not less than ten years' experience in the art of printing. The state printer shall receive such compensation as may from time to time be provided by law. Until such laws shall be enacted the state printer shall be elected and the printing done as heretofore provided by this constitution and the general laws."

■ It will be noted that there is nothing in the foregoing constitutional provision requiring the legislature to enact laws to the effect that all state printing shall be done by the state printer.

■ The sections of the statute to which reference is made on this point, as above stated, are merely legislative enactments, and, as such, subject to legislative amendment. These statutes do not require all public

printing to be done by the state printer. Even if they did, there would be no constitutional reason why the legislature could not pass a law changing such a requirement.

The fifth ground urged by plaintiff for nullifying the act in question is stated thus:

"The manner of letting bids for publishing and printing the code was unfair, is against the public policy, and is void."

■ Bids were solicited, and the contract was given to the lowest bidder. We are unaware of anything unfair or against public policy in such a course.

■ Plaintiff asserts that there is no need for a new compilation of our general laws. We think that this is a matter upon which the legislature might properly act. Moreover, by reference to the dates above set forth showing when former compilations have been published, it will be seen that each decade since 1862, has produced such a compilation. This fact dissipates the argument that no need for a new compilation is now apparent.

Plaintiff's brief in reply to the brief of Mr. Allan G. Carson, amicus curiae, was filed on June 15, 1940. In it there is a citation to 7 R. C. L. 982, § 10, and citations. As we construe this section, we think that the expression in it, which plaintiff may deem to be pertinent to the instant case, is as follows:

"It has been said that the policy and intent of the constitutional system is that the courts and judges shall not only be required, but shall not be permitted to exercise any power, or to perform any trust, or to assume any duty, not pertaining to, or connected with the administering of the judicial function; and that the exercise of any power or trust, or the assumption of any public duty, other than such as pertains to the exercise

of the judicial function, is not only without constitutional warrant, but against the constitutional mandate in respect to the powers they are to exercise and the character of the duties they are to discharge.''

The citation supporting this text is to the case of *Tyson v. Washington County*, 78 Neb. 211, 110 N. W. 634, 12 L. R. A. (N. S.) 350. In that case, the statute considered, provided for an appeal from the action of the county board in the matter of the proposed construction of a drainage ditch. The holding of the court is to the effect that whether such a ditch will be conducive to the public health, convenience or welfare, or whether the route thereof is practicable, are questions of governmental or administrative policy, and are not of judicial cognizance and jurisdiction over them by appeal, or otherwise, cannot be conferred upon the court by statute. This clearly discloses that the matter of annotating, compiling and publishing a compilation of the general laws pursuant to a course continuously observed and followed during the entire period of statehood was not within the purview of the textwriter cited or of the court whose opinion supports the text.

Plaintiff concludes the brief last mentioned as follows:

''There is this matter of the direct interest this court has in this litigation, by reason that it entered into a contract under the provisions of the Act. I have wondered, ever since I learned about the contract, as to the validity of the decision this court will make herein considering Sec. 28-1503 O. C., Sub-sec. 1.''

Section 28-1503, Oregon Code 1930, among other things, provides that:

''A judicial officer is a person authorized to act as a judge in a court of justice. Such officer shall not

act as such in a court of which he is a member in any of the following cases:

1. In an action, suit, or proceeding to which he is a party or in which he is directly interested.''

■ Plaintiff ascribes a disqualifying interest by reason of the execution of the contract with the publishing company for the publication of the compilation in suit. With equal force, such a disqualifying interest might be urged because each member of the court is a property owner and taxpayer.

Our interest as taxpayers attends in every case where a fellow taxpayer seeks to enjoin the payment of money derived from taxation; but by reason of the fact that no tribunal is available unattended by the same disqualifying interest wherein the issues of such a case may be determined, this court and other courts composed of tax-paying judges have been compelled to hear and decide such issues.

As to a hearing before a court presided over by a judge, who had no part in the execution of the contract in suit, plaintiff has had just such a hearing. The plaintiff, alone, is responsible for the necessity of an opinion thereon from this court. Whether that opinion may or may not be deemed to be valid, certainly, the opinion of the learned judge of the trial court is not subject to such a question, because he cannot be charged with a disqualifying interest by reason of the execution of such contract.

The judgment and decree of the circuit court is affirmed.

LUSK, J., concurs in the result.

BEAN and BAILEY, JJ., not sitting.