No. 1 January 16, 2014 657

IN THE SUPREME COURT OF THE
STATE OF OREGON


Everice MORO;
Terri Domenigoni; Charles Custer; John Hawkins;
Michael Arken; Eugene Ditter; John O'Kief;
Michael Smith; Lane Johnson; Greg Clouser;
Brandon Silence; Alison Vickery; and Jin Voek,

*Petitioners,*

*v.*

STATE OF OREGON;
State of Oregon,
by and through the Department of Corrections;
Linn County; City of Portland;
City of Salem; Tualatin Valley Fire & Rescue;
Estacada School District; Oregon City School District;
Ontario School District; Beaverton School District;
West Linn School District; Bend School District;
and Public Employees Retirement Board,

*Respondents,*

*and*

LEAGUE OF OREGON CITIES;
Oregon School Boards Association;
Central Oregon Irrigation District;
and Association of Oregon Counties,

*Intervenors.*

S061452 (Control)


Wayne Stanley JONES,

*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD;
Ellen Rosenblum, Attorney General;
and John A. Kitzhaber, Governor,

*Respondents.*

S061431

Michael D. REYNOLDS,

*Petitioner,*

*v.*

PUBLIC EMPLOYEES RETIREMENT BOARD,
State of Oregon; and John A. Kitzhaber,
Governor, State of Oregon,

*Respondents.*

S061454

George A. RIEMER,

*Petitioner,*

*v.*

STATE OF OREGON;
Oregon Governor John Kitzhaber;
Oregon Attorney General Ellen Rosenblum;
Oregon Public Employees Retirement Board;
and Oregon Public Employees Retirement System,

*Respondents.*

S061475

George A. RIEMER,

*Petitioner,*

*v.*

STATE OF OREGON,
Oregon Governor John Kitzhaber,
Oregon Attorney General Ellen Rosenblum,
Public Employees Retirement Board,
and Public Employees Retirement System,

*Respondents.*

S061860

On Intervenor Central Oregon Irrigation District's Motion to Disqualify Special Master and Motion to Disqualify Justices of the Supreme Court.

Kristian Roggendorf, Lake Oswego, filed the motions and combined reply on behalf of Intervenor Central Oregon Irrigation District.

Anna M. Joyce, Solicitor General, Salem, filed the response on behalf of Respondents State of Oregon, Public Employees Retirement Board, Ellen Rosenblum, Public Employees Retirement System and John A. Kitzhaber. With her on the brief were Keith L. Kutler and Matthew J. Merritt, Assistant Attorneys General.

W. Michael Gillette, Portland, filed the notice joining in the State of Oregon's response on behalf of Intervenor League of Oregon Cities.

Harry Auerbach, Chief Deputy City Attorney, Portland, filed the response on behalf of Respondent City of Portland.

Gregory A. Hartman, Portland, filed the response on behalf of the Moro Petitioners, Petitioner Riemer, Petitioner Reynolds, and Petitioner Jones.

Before Balmer, Chief Justice, Kistler, Walters, Linder, Brewer, and Baldwin, Justices.*

BALMER, C. J.

Intervenor Central Oregon Irrigation District's motions to disqualify the members of this court and the Special Master are denied.

_____

* Landau, J., did not participate in the consideration or decision of these motions.

**BALMER, C. J.**

These cases challenge the constitutionality of Senate Bill (SB) 822, passed by the 2013 Legislative Assembly during its regular session, and SB 861, passed during a special session in October 2013, both of which change certain statutory provisions of the Public Employees Retirement System (PERS) and, in doing so, affect the retirement benefits of some current and former public employees. Central Oregon Irrigation District (the District), a public employer and an intervenor in these proceedings, filed a motion to disqualify the sitting judges of the Oregon Supreme Court from hearing these cases. The District also filed a separate motion to disqualify the circuit judge appointed by this court to serve as a special master for purposes of conducting evidentiary proceedings and preparing recommended findings of fact. For the reasons that follow, we deny both motions.

The District's arguments in support of its motions to disqualify are based on statutory provisions, the Oregon Code of Judicial Conduct (Code), and constitutional principles. The District contends that participation by the judges of this court and the special master would violate ORS 14.210 and *former* Judicial Rule (JR) 2-106(A)(3) (2002) of the Code.[1] ORS 14.275 provides in part that a party "may move to disqualify a judge of the Supreme Court *** for one or more of the grounds specified in ORS 14.210, or upon the ground that the judge's participation in the cause would violate the Oregon Code of Judicial Conduct." ORS 14.210(1)(a) in turn provides in part that a "judge shall not act as judge if the judge is a party to or directly interested in the action, suit or proceeding." The substance of *former* JR 2-106(A)(3) (2002) now appears in Rule 3.10(A)(2)(c) and Rule 3.10(A)(3). That rule requires a judge to "disqualify himself or herself in any proceeding in which a reasonable person would question the judge's impartiality, including [when the judge] *** has an interest that could be substantially affected by the proceeding; *** [or when] [t]he judge knows that he or

---

[1] This court approved a comprehensive revision of the Code, effective December 1, 2013. The substance of the disqualification provision formerly set out in JR 2-106(A)(3) is now contained in Rule 3.10(A) of the Code, and the disqualification rule was amended in other respects, as discussed below.

she \*\*\* has an economic interest in the subject matter in controversy \*\*\*." The District argues that the members of the court have a direct and substantial economic interest in the outcome of these consolidated cases because they currently are members of the PERS system and their future retirement benefits may be affected by the outcome of this litigation.[2] The District further asserts that it would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution for judges who have such an interest to decide these cases.

The District argues that the special master shares the disqualifying characteristic of the members of this court because, as a judge, he is a member of PERS and, once appointed special master, he "in fact becomes a 'member' of this court, albeit temporarily." Although we do not necessarily agree with the District's assertion that the special master "becomes" a member of this court, we acknowledge that the circuit court judge appointed as a special master is a member of PERS, and we will assume for purposes of this opinion that the same analysis regarding disqualification applies to him as to members of this court.

Other parties have responded to the District's motions, arguing variously that any economic interest of the members of this court in the outcome of this case is speculative and perhaps *de minimis*; that the legislature's decision to confer jurisdiction on this court to decide challenges to SB 822 and SB 861 trumps any conflicting statutes or rules; that the "rule of necessity" permits this court to decide these cases, notwithstanding any potential disqualification; and

---

[2] State court judges become PERS members on the day that they take office. ORS 238.505(1). The District notes that some members of the court are members of PERS both because they are state judges and because they previously were state employees who worked for the Department of Justice. Although there are substantial differences in the operation of PERS and the calculation of benefits as it relates to judge members of PERS and non-judge members of PERS, the District does not contend that the changes made by SB 822 and SB 861 apply differently to judge and non-judge PERS members and draws no distinction based on type of PERS membership in the grounds that it asserts require disqualification. Accordingly, for purposes of deciding these motions, we do not distinguish between the "interest" in these proceedings that members of this court may have as judge members of PERS and the interest they may have as non-judge members of PERS.

that this court's adjudication of the challenges to SB 822 does not violate any due process right of the District.

Before turning to the substance of the District's motions, we note that the initial petitions filed in these cases challenged SB 822, a bill passed during the 2013 legislative session that modifies the cost-of-living adjustment provisions of the PERS statutes and changes a provision that relates to taxes paid by out-of-state PERS retirees. During a special session in October 2013, the legislature passed two additional bills that make changes to PERS. One of the new bills, SB 861, further modifies the cost-of-living adjustment provisions that had been addressed in SB 822. The other bill, SB 862, makes several changes to the PERS statutes, including: limiting one component of the "final average salary" that is used to calculate retirement benefits for some PERS retirees; allowing certain creditors to execute on certain PERS benefits of convicted felons; and modifying the PERS options available to legislators. Both SB 861 and SB 862 contain judicial review provisions identical to those included in SB 822. More specifically, they provide for legal challenges to the measures to be filed directly with this court, for public employers to intervene, and for this court to appoint a special master to take evidence and prepare recommended findings of fact. SB 861, § 11; SB 862, § 15. One petitioner filed a new petition and the other petitioners filed amended petitions raising the same challenges to SB 861 that they had raised to SB 822. This court issued an order consolidating those petitions with the pending challenges to SB 822 for purposes of decision. No party challenges SB 862, and we do not discuss that law further.

Because the potential grounds for disqualification that the District raises as to SB 822 also arise under SB 861, we will treat the District's motion as applying to this court's adjudication of challenges to that law as well. We will refer to the two laws, collectively, as "the 2013 PERS legislation," except when separately discussing one or the other.

As noted, certain parties that have responded to the District's motions argue that any interest that judges on this court have in the outcome of these cases is speculative and *de minimis.* They point out that the provisions of SB 822

relate to cost-of-living adjustments and out-of-state taxes for persons who are PERS retirees and that the members of this court are not *now* PERS retirees and, for a variety of reasons, might never become PERS retirees. Additionally, they note that the cost of living in the future may fall, rather than rise, rendering the prospect of future cost-of-living increases for PERS beneficiaries—and the effect of the 2013 PERS legislation on those possible increases—speculative. On the other hand, as the District argues, the value of the *potential* PERS benefits to active members of PERS, including members of this court, obviously is affected by changes to the cost-of-living adjustment provisions of the PERS statutes. For purposes of this opinion, however, we need not resolve that issue. We will assume that the potential, future impact on members of this court of the changes to PERS made by the 2013 PERS legislation—although uncertain and perhaps speculative at this time—constitutes the kind of "interest" and "economic interest" referred to in ORS 14.210 and Rule 3.10(A)(2)(c) and Rule 3.10(A)(3) of the Code.

We turn to the District's argument that the judges of this court should be disqualified because each member of the court is "directly interested" in this proceeding, and, therefore, under ORS 14.210(1)(a), "shall not act as judge" in the proceeding. That argument is unavailing, because the legislature has specifically conferred jurisdiction on *this court* to decide these very cases. SB 822, section 19(1), provides:

> "*Jurisdiction is conferred on the Supreme Court to determine* in the manner provided by this section *whether this 2013 Act breaches any contract between members of the Public Employees Retirement System and their employers, violates any constitutional provision, including but not limited to impairment of contract rights of members of the Public Employees Retirement System* under Article I, section 21, of the Oregon Constitution, or Article I, section 10, clause 1, of the United States Constitution, *or is invalid for any other reason.*"

(Emphases added.) *See also* SB 861, § 11(1) (identical provision). Furthermore, SB 822, section 19(6), and the identical provision in SB 861, section 11(6), provide:

> "In the event the Supreme Court determines that there are factual issues in the petition, the Supreme Court may appoint a special master to hear evidence and to prepare recommended findings of fact."

When the legislature enacted those judicial review provisions, it did so knowing that the members of this court are PERS members and that this court had previously decided that its members were not barred from ruling on challenges to legislative changes in PERS on that basis. The judicial review provisions of the 2013 PERS legislation are virtually identical to those that the legislature enacted in 2003 for review of the 2003 PERS legislation that was at issue in *Strunk v. PERB*, 338 Or 145, 108 P3d 1058 (2005). *See* Or Laws 2003, ch 625, §§ 17-17a (judicial review provisions for challenges to PERS legislation). Pursuant to the express grant of jurisdiction in the 2003 legislation, this court in *Strunk* appointed a sitting judge as a special master to hear evidence and prepare recommended findings of fact, and the court proceeded to decide the cases challenging the changes in PERS made by the 2003 legislation. As to the potential conflict of interest on the part of judges who are PERS members, this court stated in *Strunk*:

> "This is not the first instance in which the legislature has conferred jurisdiction specifically on this court to determine the validity of legislative or constitutional changes to PERS. In those prior instances, the 'rule of necessity' required the court to adjudicate the claims. *See Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 361 n 3, 918 P2d 765 (1996); *Hughes v. State of Oregon*, 314 Or 1, 5 n 2, 838 P2d 1018 (1992) (both discussing that doctrine). To the extent that the justices of this court either have, or arguably could be said to have, a financial stake in the outcome of this litigation, we likewise conclude that the rule of necessity requires that we decide the contractual and constitutional challenges that the legislature has directed us to adjudicate."

338 Or at 151 n 5.

In interpreting statutes, this court presumes that the legislature is aware of existing law and this court's interpretation of that law. *See State v. Stark*, 354 Or 1, 10,

307 P3d 418 (2013) (court presumes that Oregon legislature aware of existing law on subject); *State v. Clevenger*, 297 Or 234, 244, 683 P2d 1360 (1984) (noting Oregon legislature is presumed to be aware of prior decisions of the Oregon Supreme Court). In analyzing the legislature's grant of specific and express authority to this court in the 2013 PERS legislation, we again presume that the legislature was aware of the existing statutes, including the statutes that make members of this court members of PERS. We also presume that the legislature was aware of this court's decision in *Strunk* interpreting judicial review provisions virtually identical to those in the 2013 PERS legislation. In *Strunk*, this court held that those judicial review provisions directed the members of this court to decide the challenges to the 2003 PERS legislation despite any potential financial stake or other "interest" that might otherwise have disqualified them from doing so. When the legislature adopted essentially identical review provisions as part of the 2013 PERS legislation, it presumably did so with the understanding that this court would interpret those provisions in the same way that it did the provisions in the 2003 PERS legislation, *viz.*, that the members of this court could adjudicate those cases notwithstanding the potential economic interest that they might have in the outcome.[3] Accordingly, we conclude that ORS 14.210(1)(a), which provides that a judge who is "directly interested" in a case shall not act as a judge in that case, does not disqualify judges of this court from deciding these cases as a result of their membership in PERS.

The District next argues that the members of this court should be disqualified because their participation in these cases would violate the Code. The District's motion refers to *former* JR 2-106(A)(3) (2002), which provided for disqualification when a judge "has a financial interest in

---

[3] That conclusion also responds to the District's argument that the legislature's reference in the judicial review provisions of the 2013 PERS legislation to the "Supreme Court," refers to the institution in the abstract, and not to the duly elected (or appointed) and sitting members of the court. Nothing in the context of the 2013 PERS legislation or in any legislative history to which we have been directed indicates that it would be consistent with the legislature's intent to have challenges to SB 822 and SB 861 decided by a reconstituted "Supreme Court" consisting entirely of members of the bar who were never elected to a judicial position or appointed by the Governor to fill a judicial vacancy.

the subject matter in controversy" or "has any other interest that could be substantially affected by the outcome of the proceeding." As noted above, effective December 1, 2013, this court adopted a revised Code. The substance of *former* JR 2-106(A)(3) (2002) now appears in Rule 3.10, which provides that a judge shall disqualify himself or herself if he or she has "an interest that could be substantially affected by the proceeding," Rule 3.10(A)(2)(c), or "an economic interest in the subject matter in controversy." Rule 3.10(A)(3).

As discussed above, Rule 3.10 of the Code now includes an express exception to otherwise applicable disqualification rules when the rule of necessity applies: "The disqualification requirement under subsection (A) of this Rule does not apply if the rule of necessity applies." Rule 3.10(B). As we discuss in greater detail below, under the "rule of necessity," if the only judges authorized by law to decide a case all have an interest in the outcome of the case, that interest is not disqualifying because judges have "the absolute duty" to "hear and decide cases within their jurisdiction." *United States v. Will*, 449 US 200, 215, 101 S Ct 471, 66 L Ed 2d 392 (1980).

The rule of necessity has been applied consistently by federal and Oregon courts. *See Evans v. Gore*, 253 US 245, 247-48, 40 S Ct 550, 64 L Ed 887 (1920) (court must decide case involving taxation of compensation of federal judges, notwithstanding financial interest of judges in outcome of case), *overruled on other grounds by United States v. Hatter*, 532 US 557, 567, 121 S Ct 1782, 149 L Ed 2d 820 (2001); *Woodward v. Pearson*, 165 Or 40, 58, 103 P2d 737 (1940) (court members' interest as parties to contract with publishing company for publication of codification of state laws did not disqualify them from adjudicating constitutionality of statute authorizing publication). In *Woodward*, this court analogized the allegedly disqualifying interest there to litigation involving taxation:

> "Our interest as taxpayers attends in every case where a fellow taxpayer seeks to enjoin the payment of money derived from taxation; but by reason of the fact that no tribunal is available unattended by the same disqualifying interest wherein the issues of such a case may be determined, this

court and other courts composed of tax-paying judges have been compelled to hear and decide such issues."

165 Or at 58. *Woodward* thus indicates that, when no alternative tribunal is available, otherwise disqualified judges may hear the case. This court has applied the rule of necessity in cases like this one, where judges have had an otherwise disqualifying interest and no law authorizes judges without such an interest to decide the case. *Strunk*, 338 Or at 151 n 5 (citing rule of necessity and earlier cases applying it). Here, as noted, we assume that, as members of PERS, the judges of this court have an interest and an "economic interest" in the outcome of this case as those terms are used in the Code. However, the only court authorized by the 2013 PERS legislation to decide this case is "the Supreme Court." Accordingly, for the reasons we discuss below, the rule of necessity applies, and Rule 3.10 of the Code does not bar this court from deciding the case.[4]

We turn to our analysis of the rule of necessity as it applies in this case. In *Strunk*, the court followed two earlier decisions and held that the "rule of necessity requires that we decide the contractual and constitutional challenges that the legislature has directed us to adjudicate." 338 Or at 151 n 5. Here, the District does not argue that the rule of necessity should be abandoned. Rather, the District contends that the rule does not apply to this case, because it is possible to establish a "Supreme Court" of judges who are not PERS members, by means of a two-step process of appointing pro tempore judges from members in good standing of the Oregon bar who are not judges. Our prior cases do not address the District's argument, and we take this occasion to do so.

The District first asserts that this court could appoint members of the bar who are not PERS members as pro tempore circuit court judges under ORS 1.635. Then, the District continues, those "circuit judges" could be appointed

---

[4] For that reason, we need not decide whether this court could impose restrictions on its members through the Code different from those imposed by the legislature by statute. The Code provisions and the statutes that are cited in the text and that are the basis for the District's motion all relate to the "financial" interest of the members of this court in the outcome of the proceeding and provide essentially the same disqualification standard.

under ORS 1.600 as judges pro tempore of the Oregon Supreme Court. ORS 1.600 provides that, once appointed as a pro tempore judge of the Supreme Court (or Court of Appeals), the person so appointed "has all the judicial powers and duties, while so serving, of a regularly elected and qualified judge of the court to which the judge is appointed." In that way, the District argues, a "Supreme Court" could be created consisting of individual members of the bar who would have "all the judicial powers and duties *** of a regularly elected and qualified judge"—but not including any person elected as a judge under Article VII (Amended), section 1, of the Oregon Constitution or appointed by the Governor to fill a judicial vacancy under Article V, section 16, of the Oregon Constitution. That group of individuals, according to the District, none of whom would be PERS members, could decide these cases. It would be a court of pro tempore circuit court judges who had then been appointed pro tempore Supreme Court judges.

The statutes providing for the appointment of pro tempore judges to this court, however, do not permit the process that the District suggests. First, ORS 2.111(5) provides, in part: "When sitting en banc, the [supreme] court may include not more than two judges pro tempore of the Supreme Court." The District states that it is not suggesting that this court sit in a "department" of between three and five judges, as it may under ORS 2.111(2); the alternative to sitting in a department is sitting "all together," ORS 2.111(1), usually referred to as sitting en banc.[5] Under the plain text of ORS 2.111(5), however, no more than two judges of the court when sitting en banc, as this court ordinarily does, may be judges pro tempore. Thus, even if it were possible to appoint members of the bar who are not PERS members to sit on this court—which it is not, as we discuss below—no more than two such persons could be appointed.

Additionally, the District's argument that a "Supreme Court" sitting en banc could be comprised solely of individual members of the bar who are appointed to serve as

---

[5] When sitting en banc, "the presence of a majority of all the judges of the Supreme Court is necessary for the transaction of any business[.]" ORS 2.100. Thus, except when sitting in departments, four judges are required to transact business.

pro tempore circuit court judges is inconsistent with ORS 1.600(1). ORS 1.600(1) provides:

> "The Supreme Court may appoint any *regularly elected and qualified, or appointed and qualified, judge of the Court of Appeals, Oregon Tax Court or circuit court* to serve as judge pro tempore of the Supreme Court, or any regularly elected and qualified, or appointed and qualified, judge of the Supreme Court, Oregon Tax Court or circuit court to serve as judge pro tempore of the Court of Appeals, whenever the Supreme Court determines that the appointment is reasonably necessary and will promote the more efficient administration of justice."

(Emphasis added.) As noted previously, the District asserts that a member of the bar could first be appointed a pro tempore judge of the circuit court and then be appointed as a pro tempore judge of the Oregon Supreme Court. This court frequently appoints experienced members of the bar to serve as pro tempore judges of the circuit court. However, ORS 1.600(1) does *not* authorize pro tempore circuit court judges to be appointed as pro tempore judges of the Supreme Court. Rather, it explicitly limits the persons who may be so appointed to "regularly elected and qualified, or appointed and qualified" Court of Appeals, Tax Court, or circuit court judges. Pro tempore circuit court judges are not "elected." Although they are "appointed" by this court, *see* ORS 1.635, given the context of the term "appointed" in ORS 1.600(1), it plainly refers to an appointment by the Governor to fill a judicial vacancy under Article V, section 16; it does not refer to a pro tempore appointment to the circuit court by this court.

The District's position would require us to insert into ORS 1.600(1) the terms "or pro tempore circuit court judge" as a category of persons who may be appointed to serve as a judge pro tempore of the Oregon Supreme Court. We may not extend the reach of ORS 1.600(1) beyond what the terms of that statute provide. In our view, the only reasonable reading of the statutory terms in context is that they authorize the Supreme Court to appoint only regularly elected judges of the lower courts—or judges appointed by the Governor to fill a judicial vacancy—to serve as pro tempore judges of the Supreme Court.

Our conclusion, as a matter of statutory interpretation, that only regularly elected or appointed sitting judges may be appointed as pro tempore judges of the Oregon Supreme Court, is consistent with Article VII (Amended), section 2a, of the Oregon Constitution. Article VII (Amended), section 2a, addresses the temporary appointment and assignment of judges in the following terms:

> "The Legislative Assembly or the people may by law empower the Supreme Court to:
>
> "(1)   Appoint retired judges of the Supreme Court or judges of courts inferior to the Supreme Court as temporary members of the Supreme Court.
>
> "(2)   Appoint members of the bar as judges pro tempore of courts inferior to the Supreme Court.
>
> "(3)   Assign judges of courts inferior to the Supreme Court to serve temporarily outside the district for which they were elected.
>
> "A judge or member of the bar so appointed or assigned shall while serving have all the judicial powers and duties of a regularly elected judge of the court to which he is assigned or appointed."

That provision differentiates between persons who can be appointed pro tempore members of the Supreme Court (subsection 1) and persons who can be appointed pro tempore members of courts inferior to the Supreme Court (subsection 2). The text of the provision makes it plain that the constitution permits (if there is statutory authorization) only judges (retired Supreme Court judges or current judges of inferior courts) to be appointed pro tempore members of the Supreme Court. And the provision permits members of the bar who are not judges to be appointed pro tempore members of only courts inferior to the Supreme Court.

The District's proposal that this court appoint non-judge members of the bar first to be pro tempore circuit court judges and then appoint them as pro tempore members of the Oregon Supreme Court conflicts with the distinction drawn by the provisions of Article VII (Amended), section 2a. The necessary, negative implication that flows from the express terms of Article VII (Amended), section 2a,

is that non-judge members of the bar cannot be appointed as pro tempore members of the Supreme Court. The distinction drawn expressly by the provisions of Article VII (Amended), section 2a, of the Oregon Constitution cannot be evaded by the artificial construct of one pro tempore appointment overlaid on another pro tempore appointment. Consequently, we conclude that the District's proposal also is precluded by Article VII (Amended), section 2a.

For the reasons discussed above, we hold that the statutes and constitutional provisions regarding the appointment of pro tempore judges to the Oregon Supreme Court permit the appointment only of persons who are elected or appointed judges (or who were elected or appointed Supreme Court judges and are now retired). All such persons are members of the PERS system and therefore share what we have assumed for purposes of this case is an "interest" or "economic interest" in the outcome of this proceeding, as those terms are used in Rule 3.10(A) of the Code. Because all judges who could decide these cases share the same potentially disqualifying economic interest, the rule of necessity applies.[6] Accordingly, under Rule 3.10(B), the rule requiring disqualification when a judge has an interest or economic interest in the proceeding "does not apply."

The discussion above also resolves the District's constitutional argument. The District argues that even if the statutes and judicial rules permit the members of this court to decide these cases, the Due Process Clause of the United States Constitution requires that the members of the court recuse themselves. In particular, the District cites *Aetna Life Insurance Co. v. Lavoie*, 475 US 813, 106 S Ct 1580, 89 L Ed 2d 823 (1986), for the proposition that it is a due process violation for a judge to decide a case in which the judge has a financial interest. Although the United States Supreme

---

[6] The District's motion argues only that the members of this court are disqualified from deciding these cases because they are members of PERS, and the opinion addresses only that argument. There are, of course, statutes and provisions of the Code that may disqualify a particular member of the court from participating in a case for reasons specific to that member. The rule of necessity does not apply to the individual judge in that situation, because other members of the court do not share the same basis for disqualification. In this case, Justice Landau has recused himself because of a disqualification unrelated to his membership in PERS.

Court has held that it violates the Due Process Clause to have a person's case heard by a judge who "has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case," if no judge without such an interest is authorized to hear the case, due process concerns give way to the "rule of necessity." *Aetna*, 475 US at 821-22 (internal quotation marks omitted); *see also id.* at 825 (noting that disqualification of every judge in the state might implicate "rule of necessity," meaning none of the judges would be disqualified despite possible pecuniary interest).

As the United States Supreme Court stated in *Will*:

> "The Rule of Necessity had its genesis at least five and a half centuries ago. Its earliest recorded invocation was in 1430, when it was held that the Chancellor of Oxford could act as judge of a case in which he was a party when there was no provision for appointment of another judge. Y. B. Hil. 8 Hen. VI, f. 19, pl. 6. Early cases in this country confirmed the vitality of the Rule."

449 US at 213-14 (footnote omitted).[7] In *Will*, the Court addressed whether federal court judges should be disqualified from hearing a challenge to the constitutional validity of statutes that reduced the compensation of the judges. The Court determined that the rule of necessity applied and that it prevailed over claims that the judges should be disqualified.

When the rule of necessity applies, the due process concerns raised by the District give way to the fundamental need for a tribunal that can address petitioners' claims. As one lower federal court recently explained:

> "In *Will*, the Supreme Court applied the time-honored 'Rule of Necessity' because *if every potentially conflicted judge were disqualified, then plaintiffs would be left without a tribunal to address their claims*. The Rule of Necessity states

---

[7] In *Will*, the Court cited English authorities from the seventeenth century and American decisions from the early 1800s relying on a rule of necessity and went on to note that the rule has been consistently followed in this country in both state and federal courts. 449 US at 214, 214-15, nn 14-17. The Court quoted from the holdings of the Supreme Court of Kansas in *State ex rel. Mitchell v. Sage Stores Co.*, 157 Kan 622, 143 P2d 652 (1943), *aff'd*, 323 US 32, 65 S Ct 9, 89 L Ed 25 (1944), and the Supreme Court of Pennsylvania in *Philadelphia v. Fox*, 64 Pa 169 (1870), and the Court cited 14 state court decisions and four federal court decisions applying the rule. *Id.* at 214, 214-15 nn 16-17.

that '"although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but *must* do so if the case cannot be heard otherwise."'"

*Beer v. U.S.*, 696 F3d 1174, 1179 (Fed Cir 2012) (quoting *Will*, 449 US at 213 (quoting F. Pollock, *A First Book of Jurisprudence* 270 (6th ed 1929))) (citations omitted; first emphasis added; second emphasis added in *Beer*), *cert den*, 133 S Ct 1997 (2013).

Implicit in *Will* and explicit in various lower court decisions is the conclusion that, when disqualification would leave the parties without a tribunal, the parties' loss of the right to have their case heard at all is the more substantial deprivation of due process and justifies the rule of necessity. *See Atkins v. United States*, 556 F2d 1028, 1040 (Ct Cl 1977), *cert den*, 434 US 1009 (1978) ("Should we refuse to hear and decide [the plaintiffs'] cases, the doors of the courts would be closed to them. This could amount to a denial of due process under the 14th amendment to the Constitution."). In other words, the rule of necessity itself is premised on the parties' due process right to have a tribunal available to hear their case. *See Citizens Protecting Michigan's Constitution v. Secretary of State*, 482 Mich 949, 955, 755 NW2d 147, 152 (2008) (noting that the rule of necessity is "a doctrine itself predicated on due process requirements").

As discussed above, under Oregon law, the only persons other than the current members of the court who may serve on the Oregon Supreme Court for purposes of deciding these cases are retired judges of this court or current judges of lower Oregon state courts. Any substitute judge authorized by Oregon law to decide these cases would have the same disqualifying interest. Because disqualification would leave petitioners here without a tribunal to decide their claims, and in light of the legislature's express grant of jurisdiction to this court to decide challenges to the 2013 PERS legislation, we conclude that the rule of necessity applies and that the members of this court are not disqualified from deciding these cases because of any interest in the proceeding under ORS 14.210(1)(a) or Rule 3.10(A) of

the Code. We also conclude, as have other state and federal courts that have considered the issue, that application of the rule of necessity in these circumstances is not a denial of due process.

Intervenor Central Oregon Irrigation District's motions to disqualify the members of this court and the Special Master are denied.