BAKER *v.* HILL.

Opinion delivered November 18, 1929.

388

R. E. Wiley and John F. Park, for appellant.

Hal L. Norwood, Attorney General, and Walter L. Pope, Assistant, for appellees.

HART, C. J. This is an appeal by a taxpayer from a decree of the chancery court sustaining a demurrer to and dismissing for want of equity a complaint filed by him seeking to restrain the members of the Arkansas Construction Commission from carrying out the provisions of an act of the Legislature of 1929 to provide adequate buildings for the Hospital for Nervous Diseases and for the Tuberculosis Sanatorium and the issuance of State bonds therefor.

The Legislature of 1929 first passed an act to provide for the levying and collecting of a tax on incomes, which was to be known as the Income Tax Act of 1929. The same Legislature subsequently created the Arkansas Construction Commission for the purpose of constructing and equipping adequate buildings for the Hospital for Nervous Diseases, and buildings for the Tuberculosis Sanatorium. The first act referred to is No. 118, and was approved March 9, 1929. The later act is No. 180, and was approved March 22, 1929. The In-

come Tax Act of 1929 contains 44 sections, and its constitutionality was sustained in *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. (2d) 1000.

The constitutionality of act 180 is assailed in the case at bar. Section 9 of the act provides that, for carrying out the purposes of the act, the State shall borrow not exceeding the aggregate sum of $3,250,000, and shall issue the bonds of the State for the amount so borrowed, provided not more than $750,000 shall be issued in 1929. Section 10 provides that the bonds shall be known as State Construction Bonds, and contains regulations for their issue. Section 11 provides for the annual payment of the bonds from the revenue from act 118, Income Tax Act of 1929, and that the remainder shall go to reduce the State property tax under the regulations contained in the section. Section 12 defines the nature and terms of the construction bonds. It also provides that the bonds shall be negotiable paper, notwithstanding they are payable out of a special fund. Section 13 provides for the sale of the bonds, and the prices thereof. Section 14 provides for the registration of the bonds in the office of the State Treasurer. Section 15 provides for an appropriation for two years of a designated sum for construction and equipment for the State Hospital for Nervous Diseases. Section 16 contains a similar provision for the State Tuberculosis Sanatorium. Section 20 contains an emergency clause which provides that: "It is found as a fact that the State Hospital for Nervous Diseases is not adequate to take care of the patients now in the institution; the buildings at the Tuberculosis Sanatorium are insufficient to properly house and otherwise take care of those who are entitled to be admitted to that institution; the foregoing needs are so pressing that delay in responding to them may result in loss of life, prolonged sickness, and impairment of the efficiency of these institutions; and that the immediate operation of this act is essential for the protection of the wards of the State." Acts of 1929, vol. 2, p. 884.

In *Stanley* v. *Gates,* 179 Ark. 886, 19 (2d) S. W. 1000, the emergency clause was held valid as to the Income Tax Act of 1929, and the court said that the act took effect from and after its approval by the Governor, which was March 9, 1929. The court held that the action of the Legislature in declaring when an emergency exists, under Constitutional Amendment 13, is supreme, and that, if it states facts constituting an emergency so that its action cannot be said to be arbitrary, courts cannot say that it has not performed its constitutional duty, even though they might disagree with the Legislature as to the sufficiency of declared facts to constitute a sufficient reason for immediate action. That decision controls here, and it may be said the emergency in the act under consideration is stated in a plain and concise as well as comprehensive manner; therefore we hold that the act took effect March 22, 1929, the date of its approval.

The principal ground relied upon for a reversal of the decree is that the act violates § 8, art. 16, of our Constitution, which reads as follows:

"The General Assembly shall not have power to levy State taxes for any one year to exceed in the aggregate one per cent. of the assessed valuation of the property of the State for that year."

The basis of the contention is that, under the allegations of the complaint, which are admitted to be true by the demurrer, our severance tax, cigar and cigarette stamp tax, the inheritance tax, and the income tax of 1929, when added to the general property tax for State purposes of 8.7 mills on the dollar for each dollar of the assessed value of property in the State for taxation, exceeds in the aggregate one per cent. of all the assessed valuation of the property of the State for one year. We do not agree with counsel for appellant in the construction they have placed on this section of our Constitution. The provisions of § 8, art. 16, containing a restriction or limitation as to the amount or rate of taxation, refer exclusively to a property tax, but there is noth-

ing in the section which prevents the Legislature from selecting other subjects of taxation and prescribing the amount or rate of tax that it may see fit to levy thereon. According to our construction of our Constitution, other sources of revenue for State purposes than property tax may be resorted to. If the Legislature has power to raise revenue for State purposes by a property tax, it may also levy a tax for that purpose upon any other legitimate subject of taxation. There is a marked distinction in our Constitution as recognized in our adjudicated cases, between property and other subjects of taxation. The phrase, ''subjects of taxation,'' embraces all property as such, and all other items on which a tax rate may be laid as a source of revenue for the support of the State Government. Since the Constitution contains no restriction on the power of the Legislature to levy taxes except as to property as such, the Legislature has full and complete power in the levy of taxes for State purposes as to other recognized subjects of taxation. The section under consideration is a part of article 16 of the Constitution on the subject of ''Finance and Taxation.'' Section 5 of the same article is commonly called the equality and uniformity clause of the Constitution, and has been uniformly construed by this court as relating to property only.

In *Fort Smith* v. *Scruggs,* 70 Ark. 549, 69 S. W. 679, 58 L. R. A. 921, 91 A. S. R. 100, the court held that the Legislature had the power to authorize cities to impose a tax upon the privilege of driving vehicles upon the public streets of the city, and that, because the ordinance does not attempt to tax property but to tax a privilege, the provisions of § 5, art. 16, of the Constitution, requiring that all property ''shall be taxed according to its value,'' and in such manner as to make the same equal and uniform throughout the State, do not apply, since they refer to taxes upon property only.

In *State* v. *Handlin,* 100 Ark. 175, 139 S. W. 1112, an inheritance tax law was upheld on the ground that in-

heritance taxes are not laid upon property, but upon the privilege or right of succession thereto, and are not subject to the same tests with respect to equality and uniformity under § 5, art. 16, of the Constitution as taxes levied upon property. The same rule was laid down as to a tax on corporate franchises. *St. Louis S. W. Ry. Co.* v. *State*, 106 Ark. 321, 152 S. W. 110, affirmed in 235 U. S. 350, 35 S. Ct. 99.

In *Floyd* v. *Miller Lumber Co.*, 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 84, the court sustained the validity of a severance tax law, and in doing so necessarily held that it was not a property tax, and therefore did not violate § 5, art. 16, of the Constitution, that all property subject to taxation shall be taxed according to its value.

In *Sims* v. *Ahrens,* 167 Ark. 557, 271 S. W. 720, it was held that, while the act under consideration subjecting all persons and corporations to a gross income tax was void because it necessarily operated in a discriminatory and arbitrary manner, still it was within the power of the Legislature to pass a properly classified net income tax law. This rule was reaffirmed in *Stanley* v. *Gates,* 179 Ark. 886, 19 (2d) S. W. 1000. In that case the court again held that an income tax was not a property tax, and that the act therefore was not violative of the equality and uniformity clause of § 5, art. 16, of the Constitution, which relates exclusively to property taxes.

It necessarily results from these decisions that there are other sources of revenue for State purposes than that derived from the taxation of property. If the equality and uniformity clause of § 5, art. 16, refers exclusively to property taxes and not to other subjects of taxation for State purposes, such as inheritance taxes, severance taxes, income taxes and privilege taxes, we can perceive no good reason why the limitation of the rate of taxation referred to in § 8, art. 16, should not also be confined exclusively to property taxes. Judge Cooley expressly recognizes that the amount of tax authorized by State Constitutions to be levied on property as such has no reference

to specific taxes. The learned author says that tax limitations on rate or amount generally apply only to those taxes usually classified as property taxes as distinguished from excise or license taxes. Cooley on Taxation, 4 ed. vol. 1, § 168. Among the decisions cited in support of the text are cases from Alabama construing sections of the Constitution of that State similar to §§ 5 and 8 of our Constitution. In *Ex parte City Council of Montgomery in re Knox,* 64 Ala. 463, it was held that the General Assembly, not being restrained by any constitutional provision, may delegate to a municipal corporation the power to tax occupations, trades, employments and professions; and that the constitutional provision which limits municipal taxation on property to "one-half of one per cent. of the value of such property as assessed for State taxation during the preceding year" has no reference to specific taxes which may be imposed on privileges.

In *Western Union Telegraph Co.* v. *State Board of Assessment,* 80 Ala. 273, 60 Am. Rep. 99, it was held that the constitutional provisions which declare that "all taxes levied on property shall be assessed in exact proportion to the value of such property," and inhibit the levy of "greater rate of taxation than three-fourths of one per centum of the value of taxable property within this State," prescribe a rule and limit of taxation on property, but do not include all the legitimate subjects of taxation, some of which are not susceptible of determinate value. Again in *Goldsmith* v. *Mayor and Aldermen of Huntsville,* 120 Ala. 182, 86 So. 56, 11 A. L. R. 300, it was held that the amount of tax authorized by the Constitution and laws of the State to be levied upon property as such, real and personal, has no reference to specific taxes which may be imposed on occupations and privileges.

It is true that in *Eliasberg Bros. Mercantile Co.* v. *Grimes,* 204 Ala. 492, 86 So. 56, 11 A. L. R. 300, the Supreme Court of the State of Alabama held that the term "property" as used in the Constitution of 1901, § 214,

providing that the Legislature shall not have the power to levy a greater rate of taxation than sixty-five one-hundredths of one per centum of the value of taxable property within the State, includes incomes as defined and taxed by the Revenue Act of 1919, but the holding was based upon the determination that income was property within the meaning of the constitutional provision limiting the tax rate to a certain percentage of the value of the taxable property of the State as above set forth.

From reading the Alabama decisions it will be seen that the Supreme Court of that State always adhered to the view that a property tax and income tax were one and the same thing, as distinguished from an occupation or privilege tax. We have taken the contrary view, as will appear from our cases cited above, and have expressly held that an income tax and a property tax are not one and the same thing. It is perfectly evident that, if the Alabama Supreme Court had been of the opinion that an income tax was not a property tax, it would not have held that the imposition of taxes upon incomes by the Revenue Act of 1919 was void, because it exceeded the constitutional rate which might be levied on the value of the taxable property in the State.

In *Magnes' Estate,* 32 Colo. 527, 77 Pac. 853, the Supreme Court of Colorado held that a State inheritance tax law did not contravene art. 10, § 3, of their Constitution requiring uniform taxation, for the reason that the section of the Constitution related only to taxes on property, while the inheritance tax was a privilege and not a property tax. In that case it was further held that, because the inheritance tax was a tax on privilege only, it did not contravene art. 10, § 11, of the Constitution limiting the rate of taxation on property for State purposes. These principles control here, and we hold that § 8, art. 16, of the Constitution is a limitation upon the taxing power, so far as the same applies to taxation of property, and only limits the percentage rate or amount which may be levied upon property for State purposes for any one year.

Section 11 of the act under consideration provides for the payment of the "State Construction Bonds" in annual payments from revenue under act 118, Income Tax Act of 1929, and regulates the manner of payment and the disposal of the fund remaining. In this respect the act is valid and falls squarely within the rule announced in *Grable* v. *Blackwood, ante* p. 311, and cases cited.

It is next insisted that act 180 was repealed by acts 271 and 272 passed at the same session of the Legislature. Act 180, as will appear from its title and from the language of the act itself, was passed for the purpose of constructing and equipping adequate buildings for the Hospital for Nervous Diseases and buildings for the Tuberculosis Sanatorium, and authorizing the commission created to issue bonds in payment of same. Acts 1929, vol. 2, p. 884. Act 271 was an act making appropriations for purchasing site and erecting and equipping buildings for the Arkansas Tuberculosis Sanatorium. Act 1929, vol. 2, p. 1158. Act 272 was for the same purpose for the State Hospital for Nervous Diseases. Neither of the later acts contain any express repeal of act 180. Implied repeals are not favored. It is only where there is an invincible repugnancy between the two acts, as where it is evident that the last act is a substitute for the first act, or where the last act takes up the whole subject anew and covers the entire ground of the subject-matter of a former statute, that a repeal by implication is accomplished. *Massey* v. *State,* 168 Ark. 174, 269 S. W. 567; *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649; and *State* v. *White,* 170 Ark. 880, 281 S. W. 678. Here there is not only no repugnancy between the first act and the two later, but it is manifest that the two later acts were passed in aid of the first act, and not as a substitute therefor, or with the implied intention of repealing it.

Finally it is insisted that the source of revenue provided for the payment and retiring of the bonds under

act 180 is exclusively the fund from act 118, the Income Tax Law of 1929, and that this renders the act uncertain and void. We do not think so. Section 9 provides that the State shall borrow a sum of money to carry out the requirements of the act, not to exceed a designated amount, and shall issue the bonds of the State for the amount so borrowed. Section 10 provides that the bonds shall be known as "State Construction Bonds," and shall be signed by the Governor, the State Treasurer and the chairman of the commission, and shall be attested by the Secretary of State under the Great Seal of State. It further provides that the bonds shall state on their face that the full faith and credit of the State is pledged for their payment. Section 12 provides that the bonds shall be negotiable paper, notwithstanding they are payable out of a special fund. Section 14 provides that, when any bonds shall have been issued, they shall be registered in the office of the State Auditor, in a book to be provided for that purpose; and the Auditor or deputy auditor, shall indorse on each bond a certificate that in the issuance thereof all the conditions of law have been complied with. Thus it will be seen that the General Assembly, by legislative enactment, the most solemn and binding way in which it could act, pledged the full faith and credit of the State to the payment of the bonds, as well as provided a special fund to insure their payment.

The Legislature had the power to authorize the issuance of the bonds, and also to levy a tax for their payment upon any legitimate subject of taxation. This branch of the case is thoroughly settled by the principles of law decided in *Bush* v. *Martineau,* 174 Ark. 214, 295 S. W. 9.

The result of our views is that the decree of the chancery court was correct, and it will be affirmed. It is so ordered.