Argued April 30, reversed and dismissed May 14 (orally),
written opinion September 24, 1952

## GREENBERG *v.* LEE ET AL.

248 P. 2d 324

158

In Banc

*Marian C. Rushing,* of Portland, argued the cause for appellants. With her on the briefs were Alexander G. Brown and David R. Williams, of Portland.

*Floyd D. Hamilton,* of Portland, argued the cause for respondents. On the brief were Kell & Hamilton, of Portland.

WARNER, J.

This is a suit to enjoin the enforcement of ordinance No. 94552 of the city of Portland pending an opportunity to submit it to a vote by referendum.

The plaintiff-respondent is a distributor of punchboards in the city of Portland. This litigation is instituted for the benefit of himself and all other persons engaged in the same business.

The defendants-appellants are Dorothy McCullough Lee, mayor of the city of Portland, the city commissioners, the chief of police and the city attorney (whom we shall hereinafter refer to collectively as the ''city'').

Plaintiff's application for a temporary restraining order was granted. The city thereafter demurred to plaintiff's amended and supplemental complaints. Argument on the demurrer was heard before a special court of three circuit judges. This resulted in an order overruling the demurrer; and upon the city's failure to further plead, a decree was entered invalidating the emergency clause of ordinance No. 94552. It also continued the injunctive order until such time as a valid referendum petition was filed against it. Thereafter, the ordinance became a referendum measure to be voted upon at the city election to be held May 16, 1952. The unanimous memorandum opinion of the three circuit judges who heard the argument is made an appendix to respondent's brief. From the decree of the circuit court, the city appeals.

Upon the defendants' representation that the status of the ordinance involved a matter of great public interest, we consented to advance this appeal for hearing and thereafter gave a decision on May 14, 1952. We then announced that the circuit court was reversed and a formal opinion giving our reasons therefor would follow.

Ordinance No. 94552 was passed by the city council on July 10, 1951. By reason of its emergency clause, if valid, it became effective on that date and invulner-

able to referendum. The ordinance, together with its title, reads:

"An Ordinance amending Section 16-1107 of Ordinance No. 76339 (Police Code) so as to prohibit all punchboards within the City of Portland and declaring an emergency.

"The City of Portland does ordain as follows:

"Section 1. The Council finds that it is in the public interest that all punchboards be prohibited within the City due to the police problems presented by such punchboards; now, therefore, Section 16-1107 of Ordinance No. 76339 (Police Code), passed by the Council December 4, 1941, as amended, hereby is further amended to read as follows:

"Section 16-1107. PUNCHBOARDS. It shall be unlawful for any person to set up, or have in his possession or to manufacture, sell or distribute within the City of Portland any punchboard or similar device either devised or designed for the purpose of distributing money, merchandise or any other thing of value or designed to test the skill or knowledge of a person or used or played for amusement only, or otherwise.

"Section 2. Inasmuch as this ordinance is necessary for the immediate preservation of the public health, peace and safety of the City of Portland in this: In order that the police problems caused by punchboards may be relieved without delay; therefore an emergency hereby is declared to exist and this ordinance shall be in force and effect from and after its passage by the Council."

Section 16-1107 of ordinance No. 76339, as amended December 4, 1941, which is referred to in and amended by ordinance No. 94552, had prior to July 10, 1951, provided as follows:

"Effective January 3, 1950, it shall be unlawful for any person to set up, keep or have in possession or to manufacture, sell or distribute within the

City of Portland any punchboard or similar device other than those specifically allowed and licensed under Article 103 of Ordinance No. 76398, the License and Business Code of the City of Portland.''

The enactment of ordinance No. 94552 had the effect of immediately repealing the provision of ordinance No. 76339 and making punchboards and similar devices illegal in the city of Portland, if the emergency clause is legally sufficient; but if the emergency clause is invalid, then the ordinance did not become operative until 30 days thereafter or, if a valid referendum petition was filed, until the electorate approved it.

The only question we have to determine is the sufficiency of the statement of the facts and reasons for the emergency clause.

The power of the city council to pass ordinances of an emergency character is provided in §§ 2-131 and 2-134, Art. I, Ch. II of the city's charter. These sections read:

"Section 2-131. * * * Every ordinance, other than emergency ordinances, shall have three public readings, not more than two of which shall be at the same regular legislative session. At least one week shall elapse between the introduction and final passage of any ordinance and no ordinance shall be amended within one week of its final passage, except in case of an emergency ordinance. An emergency ordinance may be enacted upon the day of its introduction, providing that it shall contain the statement that an emergency exists, and specify with distinctness the facts and reasons constituting such emergency. The unanimous vote of all members of the council present, and of not less than four (4) members shall be required to pass an emergency ordinance.

" * * * * * *

"Section 2-134. * * * Ordinances (a) making appropriations and the annual tax levy, (b) relative to local improvements and assessments therefore, and (c) emergency ordinances, shall take effect immediately upon their passage. All other ordinances enacted by the council shall take effect thirty days after their passage, unless a later date is fixed therein, in which event they shall take effect at such later date, subject to the referendum and subject to the provisions of section 52 [2-135] of this charter."

We pause here to note the provision of the Oregon constitution governing the effective date of enactments of the state legislature. It is found in Art. IV, § 28 and provides:

" * * * No act shall take effect until ninety days from the end of the session at which the same shall have been passed, except in case of emergency; which emergency shall be declared in the preamble or in the body of the law."

The essential difference between the constitutional provision governing emergency acts of the legislative assembly and the charter provisions controlling the enactment of emergency ordinances in the city of Portland is: the emergency character of an act of the state legislature "shall be declared in the preamble or in the body of the law", whereas an emergent ordinance of the city must "[1] contain the statement that an emergency exists, and [2] specify with distinctness the facts and reasons constituting such emergency."

Narrowing the difference between the organic law of the state and that of the city, we find that the city is required to specify the "facts and reasons" constituting the urgency, whereas the state legislature does not labor under the necessity for supplying the "facts and reasons" for its action.

There is no contention made that the ordinance wants for an adequate "statement that an emergency exists". That is found in the last phrase of § 2 of the ordinance reading: " * * * therefore an emergency hereby is declared to exist and this ordinance shall be in force and effect from and after its passage by the Council." The real challenge to the efficacy of the ordinance's emergency character focuses our attention upon the sufficiency and distinctness of the specifications of "the facts and reasons constituting such emergency."

## The Position of the Respective Parties

The city contends that a determination by a legislative body that an emergency exists is conclusive upon the courts, even though it places the law in a category to which the referendum does not apply unless a court can find the declaration of an emergency contradictory and false on the face of the ordinance.

The city also urges that the "facts" warranting the emergency action are distinctly specified by that part of § 1 reading: " * * * due to the police problems presented by such punchboards * * *." It further claims that the "reasons" are adequately revealed by the following words found in § 2: " * * * In order that the police problems caused by punchboards may be relieved without delay * * *." As a corollary, it asserts that the ordinance discloses nothing within its four corners which renders the declaration of an emergency nugatory.

It is the thesis of the plaintiff that an emergency must presently exist before the council can speed its operation. Plaintiff accentuates the present immediacy of the cause for the urgency action rather than the immediacy of its effective date. He claims that this

can only be done when necessary for the *"immediate* preservation of the public health, peace and safety" (italics ours) and that the word "distinctness" should be read to some extent as synonymous with "detail".

Plaintiff not only argues that no emergency in fact existed but takes a position that the sufficiency of the statement of the "facts and reasons" is to be measured by the completeness of a statement which will enable the court to "go behind the face of the ordinance and examine the truth of the matter." Plaintiff's counsel here revealed this position in the following words:

> "Now I think certainly that the court can inquire into the reasons, if any, stated in the emergency because they are on the face of the ordinance. We contend, of course, and in this contention the circuit court held against us, that the court can and should go behind the face of the ordinance and examine the truth of the matter."

This is a direct challenge to the doctrine laid down in *Kadderly v. Portland,* 44 Or 118, 74 P 710, 75 P 222, and, therefore, necessitates a more extended statement in this opinion than would ordinarily be required if the literal "sufficiency" of the statement alone was involved. Most of the authorities relied upon by plaintiff, as will be later seen, exploit the broader thesis which he urges here.

### Divergent Theories Respecting Conclusiveness of Emergency Declaration

Plaintiff by his assertion that it is the duty of the court "to go behind the face of the ordinance and examine the truth of the matter" raises a question as to the finality of a legislative decision that an urgency in fact exists. It furnishes a convenient point from which to orient ourselves for the conclusions which follow.

The question is well settled in Oregon. *Kadderly v. Portland,* supra, definitely is aligned with the "conclusive" states. By the rule there announced, the legislative findings on the necessity for emergency acts are conclusive on the courts. Ever since its first utterance, now nearly a half century ago, it has without deviation been consistently followed in this state. *Roy v. Beveridge,* 125 Or 92, 96, 266 P 230; *Joplin v. Ten Brook et al.,* 124 Or 36, 263 P 893; *Simpson v. Winegar,* 122 Or 297, 258 P 562; *Bennett Trust Co. v. Sengstacken,* 58 Or 333, 343, 113 P 863; *Dallas v. Hallock,* 44 Or 246, 258, 75 P 204. Also see *Biggs v. McBride,* 17 Or 640, 21 P 878, 5 LRA 115.

The applicable rule in the Kadderly case is at once the cornerstone appropriately supporting the legal contentions of the city and also the rock against which the tide of plaintiff's argument must break and retreat.

■ Plaintiff confesses the teaching of that case insofar as it governs the state legislature. He seeks to avoid its impact by contending that it has no applicability to ordinances passed pursuant to a city charter. This position of plaintiff is untenable and is also so recognized by the lower court. The decisions of this court demonstrate his erroneous reasoning in this respect. See *Beezley v. City of Astoria,* 126 Or 177, 192, 269 P 216, 60 ALR 504; *Cameron v. Stevens,* 121 Or 538, 543, 544, 256 P 395; *Kershaw et al. v. City of Willamina et al.,* 119 Or 543, 250 P 235; *Thielke v. Albee,* 79 Or 48, 153 P 793.

The heart of the Kadderly case is found in the following words (44 Or 148) : " * * * the judgment of the legislative and executive departments as to the wisdom, expediency, or necessity of any given law is conclusive on the courts, and cannot be reviewed or called in question by them * * *."

Substantially all the authorities relied upon by plaintiff are pronouncements from "non-conclusive states" which adhere to a rule directly opposite to that laid down in this state in the Kadderly case. Among the "non-conclusive states" to which plaintiff makes reference are Washington, Missouri, New Jersey, Illinois and Florida. 7 ALR 519; 110 ALR 1435. Therefore, it follows that plaintiff's citations from such states lose much weight here on the subject of conclusiveness.

It is noteworthy that plaintiff musters only four Oregon cases to uphold his argument. They are *Kadderly v. Portland,* supra; *Joplin v. Ten Brook et al.,* supra; *Thielke v. Albee,* supra; and *Biggs v. McBride,* supra. On the other hand, he leans heavily upon the following authorities from foreign jurisdictions: *Fuller v. Gardner,* 138 Fla 837, 190 So 442; *Graham v. Dye,* 308 Ill 283, 139 NE 390; *Payne v. Graham,* 118 Me 251, 107 Atl 709; *Mayor and City Council of Baltimore v. Hofrichter,* 178 Md 91, 11 A2d 375; *State v. Becker,* 289 Mo 660, 233 SW 641; *State v. Carr,* 239 Mo App 939, 203 SW2d 670; *Murphy v. Town of West New York,* 130 NJLJ 341, 32 A2d 850; *State v. Martin,* 29 Wash2d 799, 189 P2d 637; *State v. Meath,* 84 Wash 302, 147 P 11.

*State v. Becker,* supra, and *State v. Meath,* supra, are primal decisions in the states of Missouri and Washington, respectively, on the question of legislative conclusiveness. Both refer to and critically examine the Kadderly case and thereafter adopt a doctrine to the contrary. *State v. Martin,* supra, a later Washington case, reiterates its adherence to the rule of non-conclusiveness adopted in the earlier Meath case; and its conclusions therein, although applied to a city

charter instead of a state legislative act as in the Meath case, are colored and controlled thereby.

In *State v. Carr,* supra, another Missouri case employed by plaintiff, the court cites and dispatches the case of *State v. Becker,* supra, in this language (203 SW2d 675): "* * * We find it [the Becker case] of little value in the case before us. There were so many concurrences in the result that it is quite difficult to ascertain just what was really decided by the Court * * *." We join in this judicial observation from the state in which the Becker case had its origin.

In the Illinois case of *Graham v. Dye,* supra, we learn that the provision of the Illinois constitution governing emergency legislation is written in the same language found in the Oregon constitution (Art. IV, § 28) insofar as it mandates that the "emergency shall be declared in the preamble or in the body of the law." We read in the Graham case (139 NE 391):

"* * * The meaning of that language seems plain, and it seems obvious that the reasonable understanding of it could not be otherwise than that there should be stated in the preamble or body of the act facts which created the emergency and made it important that the statute take effect immediately upon its being approved * * *."

However, the Graham case, except to say that the emergency clause is void in the absence of such statement of fact, does not undertake to advise what constitutes the sufficiency of such statement when made nor to what extent it will be reviewed by the courts. Thus, this judicial expansion of the plain words of the Illinois constitution affords no help here in the solution of the problem confronting us.

*McIntyre v. Commonwealth* (1927) 221 Ky 16, 297 SW 931, finds a prominent place in plaintiff's brief. The dissenting opinion in that case, concurred in by

three of the seven members of the Kentucky court, vigorously upholds the doctrine of legislative "conclusiveness" as expounded by the Kadderly case and therein quoted at length. However, the holding in the McIntyre case is weakened, if not overruled, by implication in the later unanimous decision in *Hill v. Taylor* (1936) 264 Ky 708, 95 SW2d 566. In the Hill case, in response to the appellants' argument "that in considering the validity of a facilitating clause * * * the courts can review the action of the Legislature for the purpose of determining whether or not an emergency actually existed", the court said (95 SW2d 570): "* * * The only case in our jurisdiciton which tends to support appellants' contention is *McIntyre vs. Commonwealth* * * *." And further: "* * * That opinion [the McIntyre case] barely carries its own weight. We are not disposed to extend the decision beyond the facts peculiar to the case or to make specific application of some of the language used therein." The court in the Hill case then proceeds to align Kentucky definitely with the conclusive states and, in so doing, cogently says (95 SW2d 570):

"* * * Proper regard for the balancing of the two co-ordinate departments of government and respect due by one to the other demands the assumption that reasons good and sufficient to the General Assembly were set out at length in the journals. The judiciary cannot claim that it only is faithful to constitutional obligations. Such is the rationale of our often expressed conclusion, consonant with the weight of authority, that the courts will not inspect the journals of the Legislature, and upon such inspection, though conditions which might justify it are found there, affirmatively or negatively, impeach the integrity of that honorable body or invalidate its enactments on account of the disclosure. For such purpose, the books are closed and sealed * * *."

Plaintiff and the circuit court give great weight to *Payne v. Graham,* supra. The Maine constitution in emergency legislation requires that "the facts constituting the emergency shall be expressed in the preamble of the act." It was the holding there that the act then under consideration contained no statement of facts as required by the constitution and, therefore, it was rejected. In the instant matter the challenge goes not to the absence of a statement of facts but to the sufficiency of the statement. See the later Maine decision in *Morris v. Goss* (1951) 147 Me 89, 83 A2d 556, 561, where the sufficiency of an emergency preamble was before the court and where the court said:

"* *. * It is likewise a question of fact whether or not an expressed fact which can constitute an emergency, does constitute an emergency. These questions of fact are within the exclusive province of the Legislature for its determination. A determination of these questions by the Legislature being a determination of fact and not of law, and being a determination within its exclusive province, is not subject to review by this Court."

### The Joplin Case

Here we find both parties relying upon the same case in support of their several positions. Both cite *Joplin v. Ten Brook et al.,* supra, 124 Or 36, which construes the charter of the city of Astoria.

Generally speaking, the city employs it as being supplemental to the doctrine of *Kadderly v. Portland,* supra, 44 Or 118, whereas plaintiff interprets it as an exception deviating from the principle of the Kadderly case, at least when applied to city ordinances in contradistinction to state legislation.

The city limits the application of the Joplin case to legislation which, on its face, discloses that the

declaration of an emergency is contradictory to the ordinance's avowed purpose or false as a matter of law.

Plaintiff's position concerning the applicability of the Joplin case is comprehended in the following statement taken from his brief: "We read the *Ten Brook* case [124 Or 36] as announcing the rule that a court may inquire into the existence of an emergency where a city ordinance is involved * * *."

That part of the Portland charter mandating the inclusion of a statement of facts and reasons in an emergency ordinance has never been construed by this court. The only charter which we have reviewed here with a somewhat similar provision is the charter of the city of Astoria, which reads: "An emergency ordinance may be enacted upon the day of its introduction, providing it shall contain the statement that an emergency exists, and specify the reason constituting such emergency." Whereas the comparable provision of the Portland charter required a statement of "facts and reasons", the Astoria charter goes no further than to direct a specification of "the reason" constituting the emergency.

In the Joplin case we held, in essence, that it was palpably evident from a reading of the controverted Astoria ordinance that no emergency in fact existed and that the ordinance to which the emergency clause was appended was absolutely void.

The importance which the parties and the circuit court in its opinion attach to the Joplin case merits its analysis, especially with reference to the facts, in order to understand correctly the scope and significance of that holding. To that end we have again examined the record in that case.

In June, 1927, the city of Astoria in its municipal and business life continued to labor under serious financial exigencies that were a logical aftermath to the catastrophic fire which that community had sustained a few years before. The city council, to induce the influx of new capital and the expansion of industry, proposed an amendment to the city charter. This was designed to enable the city to cancel and discharge city liens theretofore levied against real property situated within its boundaries. The ordinance placing this proposal on the city ballot was ordinance No. 27-83. At the same time and as a part of the same design, the city council adopted ordinance No. 27-82. The two ordinances were in every sense companion and coordinate enactments. Ordinance No. 27-82, construed by the Joplin case, had for its purpose the establishment of an election date for voting on the proposed charter amendment covered by ordinance No. 27-83 and the repeal of an existing ordinance which governed the manner and time of city elections. This amendment of the local election law became necessary, among other reasons, in order to shorten the time required by previous ordinances for the calling of a special election. Ordinance No. 27-82 sought to accelerate the opportunity of the electors to vote on the charter amendment proposed by ordinance No. 27-83. Section 1 of ordinance No. 27-82 declared the purpose of the election was to vote upon "a proposed amendment * * * to the Charter." This was followed by a specific and detailed statement of the charter amendment proposed by ordinance No. 27-82. Ordinance No. 27-83 concluded with an emergency clause reading (from appellant's abstract of record in the Joplin case):

"* * * Inasmuch as the objects of this ordinance will be of great benefit to the people of the

City of Astoria, and there exists and is an urgent necessity that this ordinance should take effect as soon as possible so that the health, peace and safety of the inhabitants of the City of Astoria may be preserved, an emergency is hereby declared to exist, and this ordinance therefore shall be in full force and operative immediately after its passage by the unanimous vote of all the members of the Common Council present, and not less than four members thereof.''

Shortly prior to our decision in *Joplin v. Ten Brook et al.*, supra, the constitutionality of the charter amendment submitted by ordinance No. 27-82 had been challenged in the case of *Hauke v. Ten Brook et al.*, 122 Or 485, 259 P 908, and the proposed charter provision was there held null and void as in violation of both the letter and spirit of Art I, § 20 of the Oregon constitution. Thus when the Joplin case came to this court's attention, the ordinance which was the subject of that suit disclosed on its face the anomalous proposition of the declaration of the existence of an emergency which sprang solely from a desire to quicken the adoption of an unconstitutional charter provision.

The holding of the court in the Joplin case was stated by Mr. Justice McBride in these words (124 Or 40):

"We hold in this case and in all cases, where the action of the city council is involved, if upon the face of the ordinance it reasonably appears that an emergency exists, or might seem to a reasonable mind to exist, that a general statement that the immediate effect of the ordinance is necessary for the peace, health or safety of the community, such declaration will be binding on the courts even though the courts might differ as to the urgency so declared. But, where *it is apparent upon the face of the ordinance* that there is no urgent necessity for its passage and going into

effect immediately, and it is apparent that the real reason for such declaration of urgency is to avoid the invocation of referendum upon the proposed measure, the court will scrutinize the declaration and, if no seeming emergency actually exists, it will declare the ordinance ineffective. Citing Ex parte Hoffman, supra, [155 Cal 144, 99 P 517] and Morgan v. City of Long Beach, 57 Cal. App. 134 (207 Pac. 53) * * *.'' (Italics ours.)

Let it be observed at the outset that the court in the Joplin case did not travel outside the record found within the four corners of ordinance No. 27-82. It set up no standard to test the sufficiency of the charter-mandated statement of ''facts''. Its determination involved no recognition of facts other than there disclosed. The ordinance itself revealed a set of unambiguous facts which enabled the court in that instance to say without argument or recourse to other evidence that the declaration of an emergency there found was a meaningless and invalid pronouncement. Indeed, even if the court had not previously declared the charter amendment proposed by ordinance No. 27-83 unconstitutional, as it had in *Hauke v. Ten Brook et al.,* supra, there was a sufficient statement of the substance of the charter amendment in ordinance No. 27-82 to have warranted the same conclusion earlier made in the Hauke case.

We also find in *Kadderly v. Portland,* supra, authority for the very position taken by Mr. Justice McBride in the Joplin case. There we read (44 Or 148): '' * * * It is the duty of the courts, after a law has been enacted, to determine in a proper proceeding whether it conflicts with the fundamental law * * *.''

It would, indeed, be a futile gesture to attach an emergency clause to an act which proposed legislation inhibited by the organic law of the city or state pro-

posing it or which it otherwise had no authority to enact, either with or without an emergency clause. No matter how persuasive or plausible the recited facts or how cogent the reasons for emergency action, want of legislative power to promulgate the legislation proposed would gain no vitality by reason of such recitals or urgency declarations.

■ Read in the background of the facts occasioning and warranting the pronouncement in the Joplin case, it is our considered conclusion that that case holds and was intended only to hold: When a given city ordinance discloses on its face that the claim of an existent emergency is false and contradicts other matter apparent on the face of the ordinance or that the legislation proposed thereby is contrary to the organic law of the state or city or is otherwise beyond the scope of its authority, the emergency declaration will be declared void.

■ When we apply the rule in the Joplin case to the instant case, we find nothing on the face of ordinance No. 94552 which enables us to say that the declaration that an emergency exists is rendered false and contradictory by any other matter appearing therein, nor can we say from such examination that the proposed legislation is not within the ambit of the Portland city council's authority to legislate thereon.

*The Purpose of a Statement of Facts and Reasons*

Understanding of the charter provision which we are called upon to review will be enhanced and our conclusions will rest upon firmer ground if we pause to discover the ultimate purpose sought to be achieved by the presence in the enactment of a statement disclosing the "facts and reasons" for the emergency declaration.

The inclusion in the act itself of a statement of the "facts" or the "facts and reasons" which motivated a legislative body into the passage of an emergency law does not change their innate character as legislative "facts" which the legislative body alone has the right to evaluate. There is no magic of legal conversion wrought or transformation effected by placing in the body of the bill or ordinance all or part of what may elsewhere be found in the legislative journals or other records, if any, of the hearings, reports or debates which were preliminary to a vote on the challenged measure. The recital of all or a part of the same "facts and reasons" in the ordinance itself does not in and of itself take the ordinance beyond the reach of the doctrine found in the Kadderly case. As was said by Mr. Justice Brewer in the quotation from that learned judge, employed with approval by Mr. Justice BEAN in the Kadderly case (44 Or 149): " 'When the legislature enacts a law, *the only question* which we can decide is whether the limitations of the constitution have been infringed upon.' " (Italics ours.) *Morris v. Goss,* supra, 83 A2d 561, is additional support for this conclusion.

The charter has, in our opinion, a very salutary purpose. The very presence of this somewhat unique provision compels respect from the city council and the courts. As we conceive the charter objective, it is in a sense two-fold: one is primal, the other corollary or incidental but nevertheless of no mean value or importance. We will first address ourselves to

### a. *The prime objective*

We may properly assume that §§ 2-131 and 2-134 of the charter were written with the doctrine of the Kadderly case in mind and with no intent to avoid

or circumscribe its application. When we examine § 2-131 of the city charter in its entirety, we find that it is one of procedure. It relates to the method for the enactment of two types of city legislation, which are the only types that can be adopted by the city's legislative body. The first type is all ordinances ''other than emergency ordinances''. The second type is emergency ordinances. For the first type three public readings are required with a session interval between two of the prescribed readings. Other delaying procedures are indicated before final passage. As to emergency ordinances, the restraints imposed upon the passage of the first type are waived and, as a substitute therefor, the council is required to include within such ordinance not only a statement that an emergency exists but ''specify with distinctness the facts and reasons constituting such emergency.''

█ It is clear to us from a reading of § 2-131 that its over-all objective was to induce and secure as nearly as possible temperate and considerate legislative action, whether it be emergency or otherwise, and that was the prime purpose expected to be attained thereby.

The charter mandate is a time-tested device taken from the book of human experience. It is but a present-day and practical application of a trait common to all men, that is, he who must write of the fact compelling his action and who must memorialize his reasons in justification for his course usually pauses to reflect well before making such record, deliberates upon and ponders his facts and reconsiders his reasons for the act which follows. The contrary is too often true when there is no printed or written record of accountability to haunt the careless or the indifferent legislator.

The obligation imposed upon the city council to include in the ordinance a statement of facts and rea-

sons, rather than rest alone upon a declaration that an emergency exists, as can be done by the state legislature, tends to give more than a modicum of assurance that the ordinance has received considered action. In this respect it is analogous in purpose, if not identical in method, to the three readings required of an ordinance not emergency in character and, we believe, equally as efficacious in result.

The required readings on the one hand and the statement of facts and reasons on the other have a common end in that they are natural impediments to impetuous, impulsive, capricious or arbitrary legislation. They stand as bars to precipitantness and place a premium upon laws born of cautious inquiry and sober reflection. The inclusion of a statement of the facts and reasons for the legislative action gives no absolute guarantee, any more than do three public readings, that the final result will be received with universal acceptance and acclaim. It does, however, attest that the act in question was preceded with a pause provocative of the kind of consideration which the public has a right to expect from responsible lawmakers.

A further safeguard against imprudent action is found in § 2-131 of the city charter which requires: "* * * The unanimous vote of all members of the council present, and of not less than four (4) members shall be required to pass an emergency ordinance."

### b. *Incidental objectives*

We are moved to note an incidental objective to be attained by the required statement of facts and reasons. This is prompted by plaintiff's assertion that the sole, exclusive and express purpose of the emergency declaration was to deprive "the inhabitants of Port-

land of their right to refer said proposed ordinance to the legal voters of the City for approval or rejection at the next general election," and its implication that the voters were thereby rendered impotent to correct the alleged mischief or punish those members of the council guilty of the legislative error.

With the statement that a referendum was thereby denied, there can be no cavil or dispute; but in no sense was the public thereby robbed of *all* opportunity to vindicate its judgment that the legislation was wrong or that which was repealed could not be restored and, if so minded, at the same time punish the members of the council for their offending action by denying them further tenure in office. Indeed, there are jurisdictions which have held that the prime purpose of "facts and reasons" clauses is designed to promote that end. Our own decisions, as we shall later see, have long ago pointed in that direction.

In *State ex rel. City of Fostoria v. King,* 154 Ohio St 213, 94 NE2d 697, two emergency ordinances were the object of judicial concern. They contained statements of reasons for the emergency, but an attack was made upon them as contravening the referendum power, coupled with an allegation that the reasons stated did not show that an emergency was necessary. The court said (94 NE2d 701):

> "It may seem strange to sustain legislation as emergency legislation not subject to referendum, where there is in fact no emergency, or where the reasons given for the necessity and for declaring the emergency do not appear to be valid reasons. However, as does Section 4227-3, General Code, provisions for emergency legislation usually safeguard referendum rights by requiring substantially more than a majority vote to enact emergency legislation. The statutory requirement of stating reasons for declaring the emergency is provided only

to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency. *If there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives.* However, the existence of an emergency or the soundness of such reasons is subject to review only by the voters at such a subsequent election of their representatives. *They are not subject to review by the courts * * *."* (Italics ours.)

We have already indicated our thought that the primal purpose of the charter was for the governance of the council as a check upon inconsiderate action. Yet we are not unmindful that it has another value and function. It also points the way to, if not invites, corrective action on the part of the public displeased therewith. It tends by the recital of the facts and reasons to focus public attention upon the justification for quickening the operating date of the law. If the inquiry thus stimulated leaves interested voters unconvinced, then those displeased with the result can decide upon which of the three available ways to pursue to correct the ensuing alleged wrong or punish those responsible therefor, or both. The courses open to those offended by the council's conduct are (1) to countermand the result through the avenue of the initiative, (2) to recall the erring councilmen, or (3) to resolve to vote against such legislators when they next seek re-election. It will be observed that all are exercised through the ballot box.

This thought finds foundation in *Biggs v. McBride,* supra, 17 Or 640, 647, where the court said:

" * * * Such determination [i.e., the existence of an emergency by the legislature] is in its nature

political, and not judicial, and for such errors, if they be errors, the remedy must be found in the virtue and intelligence of the people. *The ballot-box is the medium through which they may be corrected.*" (Italics ours.)

In answer to the question "* * * what remedy will the people have if the legislature, either intentionally or through mistake, declares falsely or erroneously that a given law is necessary for the purposes stated?", Mr. Justice BEAN in *Kadderly v. Portland,* supra, 44 Or 150, responded as follows:

"* * * The constitution has wisely divided the government into three separate and distinct departments, and has provided that no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in the constitution expressly provided: Const. Or. Art. III, § 1. It is true that power of any kind may be abused when in unworthy hands. That, however, would not be a sufficient reason for one coordinate branch of the government to assign for attempting to limit the power and authority of another department. If either of the departments in the exercise of the powers vested in it, should exercise them erroneously or wrongfully, the remedy is with the people, and must be found, as said by Mr. Justice Strahan in Biggs v. McBride, 17 Or. 640 (5 L.R.A. 115, 21 Pac. 878), in the ballot box * * *."

The recourse to the ballot box suggested in the Biggs and Kadderly cases has attained greater significance since their first pronouncements. We now have, as we did not then have, the initiative and the recall.

This choice of three ways, other than referendum, exercised through the ballot box demonstrates that the public is not completely denied an opportunity to

correct a legislative error or vindicate a political principle. The argument that the urgency clause of the ordinance, if effective, unwarrantedly deprives the electorate of the power to invoke a referendum against it necessarily loses much of its power by reason of the availability of these alternative and, in some instances, concurrent methods to right a real or imagined legislative wrong.

We do not represent that the three aforementioned devices by ballot are analogous in scope or result to the power of referendum; but we do suggest that their very availability as a method to register public displeasure with any given legislative action or, indeed, to restore that which may have been undone by unwise legislative judgment goes far to mitigate the loss of opportunity claimed by the denial of the referendum power.

*The Sufficiency of the Statement of Facts and Reasons*

Under this headline we approach the last and ultimate question to be decided.

██ Holding as we do that the prime objective of the charter provision is a brake upon inconsiderate legislative action and in no event can become the basis for a judicial review challenging the wisdom or expediency which persuaded the lawmaking body in its determination of the existence of an emergency or the necessity for an immediately-effective enactment, it becomes obvious that there is less occasion for an extended statement of facts and reasons than might otherwise be appropriate if Oregon were not a "conclusive state". The mandatory recital is not to prove that the council is right so much as it is to demonstrate that the ordinance was conceived in an atmosphere of proper legislative deliberation.

■ The words, "specify with distinctness the facts and reasons constituting such emergency" when the same cannot become a basis for a judicial evaluation of the facts and reasons so specified, do not call for a protracted narration of factual detail nor the precise argumentative reasoning which produced the final legislative judgment. The charter phrase contemplates quality rather than quantity of content.

■ In our opinion, the charter provision imposes no greater burden than to report the *ultimate* fact or facts or the *ultimate* reason or reasons which impelled the ordinance's emergent character. In so saying, we adopt as our definition of "ultimate fact" that found in *Oregon Home Builders v. Montgomery Inv. Co.,* 94 Or 349, 355, 184 P 487: "* * * An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts * * *." It is sometimes called a mere conclusion of fact.

We revert again to *Morris v. Goss,* supra, 83 A2d 556, 563, where the Maine Supreme Court referred to its previous decision in *Payne v. Graham,* supra, 107 Atl 709, so stressed in respondent's brief, and find therein this statement in line with our conclusions here:

> "It is true that Payne v. Graham, supra [118 Me. 251, 107 A. 710], is authority for the proposition that the provision of the Constitution requiring that 'the facts constituting the emergency shall be expressed in the preamble of the act' is not satisfied by the recital of a mere conclusion instead of facts. However, that constitutional requirement is satisfied by the expression in the preamble of *an ultimate fact or facts* which constitute an emergency without a recital of all of the separate facts evidencing the existence of such ultimate fact." (Italics ours.)

■ In the absence of a showing to the contrary, the court will presume that in the enactment of an ordi-

nance, all necessary requirements have been complied with. *Young v. Galloway,* 177 Or 617, 624, 164 P2d 427; *Woodward v. Pearson,* 165 Or 40, 44, 103 P2d 737; *Boyd v. Olcott et al.,* 102 Or 327, 360, 202 P 431; *Emmons v. Southern Pac. Co.,* 97 Or 263, 274, 191 P 333.

The rule that every intendment is to be made in favor of the validity of a statute and, if there is doubt respecting its constitutionality, the statute must be upheld unless it is clearly repugnant to some provision of the constitution, is equally applicable to municipal ordinances. In *City of Portland v. Stevens,* 180 Or 514, 527, 178 P2d 175, it is said: "* * * If the ordinance may be sustained only in the event that circumstances exist which justify its adoption as a reasonable exercise of the police power, the existence of such circumstances will be presumed * * *."

The foregoing doctrine has been applied to emergency legislation when, as here, a statement of facts is required to be included in the enactment. An excellent example of this is found in *Davis v. Los Angeles County,* 12 Cal2d 412, 84 P2d 1034, 1040, another case brought to our attention by the respondent and where the court holds:

"* * * If there is any doubt as to whether the facts do or do not state a case of immediate necessity, that doubt should be resolved in favor of the legislative declaration (Naudzius v. Lahr, 253 Mich. 216, 234 N.W. 581, 585, 74 A.L.R. 1189); or, as it has otherwise been stated, 'if fair-minded and intelligent men might reasonably differ as to the sufficiency and truth of the fact assigned for placing the act in effect immediately upon its passage, the courts are concluded by the finding' (Jumper v. McCollum, 179 Ark. 837, 18 S.W.2d 359, 361, and cases referred to); or, if the legislature 'states facts constituting an emergency so that its action cannot be said to be arbitrary, courts cannot say that it

has not performed its constitutional duty, even though they might disagree with the legislature as to the sufficiency of declared facts to constitute a sufficient reason for immediate action.' Baker v. Hill, 180 Ark. 387, 21 S.W.2d 867, 868.''

█ In our opinion, the statement of facts and reasons in this matter does not conjure up doubts requiring recourse to rules of presumption or construction but, to the contrary, is clear and constitutes a substantial compliance with the provisions of § 2-131 of the charter.

We think that the phrase found in § 1 of the ordinance reading, ''due to the police problems presented by such punchboards'', constitutes a sufficient and distinct statement of an ultimate ''fact'' and that the further phrase, which is a part of § 2, reading, ''In order that the police problems caused by punchboards may be relieved without delay'', is an equally distinct and sufficient statement of the ''reason'' for the emergent provision.

Although our final conclusion is not dependent upon the phrase ''police problems.'' as variously employed in ordinance No. 94552, we think its presence as there used has a greater significance than the plaintiff is willing to concede. A ''police problem'' is potentially a serious problem in the area of law enforcement which, in common parlance, connotes a pressing element of emergency arising from impending danger to the community wherein the ''police problem'' exists and of a character demanding urgent attention to abate or avoid it. The words, when used in conjunction with some existing thing or condition suggesting the presence of gambling, immediately imply the present or prospective happening, directly or indirectly, of one or more events which are or should be proscribed by penalty or restraint under the laws of the community.

This case was evidently brought to test this ordinance in the interest of the whole community. Because of the ostensible general interest therein, neither party will recover costs.

The decree is reversed and the suit dismissed.

ROSSMAN, J., specially concurring.

As stated in the opinion written by Mr. Justice WARNER, this case was decided May 14, 1952, and the announcement of our holding indicated that we would later give the reasons which prompted the decision. I cannot say that the well-written opinion of Mr. Justice WARNER expresses the reasons which persuaded me, May 14, to believe that the circuit court's decree was erroneous.

Portland's charter provides that the council of that city, in adopting emergency ordinances, must "specify with distinctness the facts and reasons constituting such emergency." When I concurred in the action taken May 14, I believed, and still do, that such a material distinction exists between civil and criminal measures that it may affect the specification by the council of "the facts and reasons constituting such emergency." Civil legislation which concerns an emergency may not reveal by its own phraseology the emergency with which it is intended to cope. Therefore, it may be necessary to append to the measure a clause which delineates the emergency. Upon the other hand, criminal legislation always deals with conduct which is so evil that the lawmaker is authorized, not only to prohibit it, but to prescribe penalties for those who engage in it. Thus, penal legislation sometimes deals with self-evident emergencies. If an act stated that cattle stealing had become prevalent and that the theft of cattle was, therefore, rendered a felony, one

could readily infer from those terms themselves that the act was concerned with an emergency.

The ordinance under scrutiny states that punchboards were in use in the city and that the council believed that their continued use was such an evil that it should be made a punishable offense. Going on, it prohibited the use of punchboards and declared that an emergency existed.

May 14, when I voted to reverse the circuit court, I believed that the facts which I have just reviewed constituted a specification of "the facts and reasons" which constituted the emergency. The latter was not expressed as well as good draftsmanship could have done, but, nevertheless, the specification constituted substantial compliance with the charter's requirements. In short, I believe that when conduct is made penal by an emergency enactment and when the latter states that the conduct is being commonly employed, those recitals suffice to comply with the charter's requirements. The above are the reasons which prompted my action.

LATOURETTE, J., dissenting.

It is axiomatic that the charter of a city is in effect the constitution of the city, and, if the provisions of an ordinance conflict with the provisions of the charter, that part, at least, of the ordinance must fall. Keeping in mind this principle, I now approach the simple question involved in this appeal: whether or not the ordinance in question complies with the charter of the city of Portland in the respect that it does " 'specify with distinctness the facts and reasons constituting such emergency.' "

The emergency clause of the ordinance is as follows:

" 'Section 2. Inasmuch as this ordinance is necessary for the immediate preservation of the

public health, peace and safety of the City of Portland in this: In order that the police problems caused by punchboards may be relieved without delay; therefore an emergency hereby is declared to exist and this ordinance shall be in force and effect from and after its passage by the Council.' ''

From the foregoing, we see that the claimed emergency is created by ''police problems''. It is my opinion that ''police problems'' is a mere conclusion and is not a distinct statement of the facts and reasons for the claimed emergency and certainly is not specific.

The word, ''specify'', is defined in Webster's New International Dictionary (2d ed) as: ''To mention or name in a specific or explicit manner; to tell or state precisely or in detail; * * *.''

In *Herrin v. Erickson*, 90 Mont 259, 2 P2d 296, 300, it is found that the constitution required the legislature, in creating a debt, to ''specify the purpose to which the funds so raised shall be applied.'' The court, in defining ''specify'', said:

'' 'To ''specify'' means ''to mention specifically; state in full and explicit terms; name expressly or particularly.'' Standard Dictionary; Peters v. Banta, 120 Ind. 416, 22 N. E. 95, 23 N. E. 84, 85. It is an ordinary word used in common speech and generally understood; it must be given the understanding which the people who voted for the Constitution would give it. Collins v. Kephart, 271 Pa. 428, 434, 117 A. 440. ''Specific'' is the very opposite of ''general.'' Smith v. McCoole, 5 Kan. App. 713, 46 P. 988, 989. This act of assembly is anything but specific; it is general in its terms. * * *' ''

In *Independent Highway Dist. No. 2 v. Ada County*, 24 Idaho 416, 134 P 542, 545, we find the following definition: '' 'Specify' is defined to mean: To mention

specifically; to state in full and explicit terms; to point out; to particularize, or to designate by words one thing from another.''

In *A. M. Dillow & Co. v. City of Monticello,* 145 Iowa 424, 124 NW 186, 189, we read:

"* * * 'Specify,' according to the lexicographers, means to mention specifically or explicitly, to state in full and explicit terms or explicitly and in detail, name expressly distinctly and particularly. In Stewart v. Jacques, 77 Ga. 365, 3 S. E. 283, 4 Am. St. Rep. 86, it is said to mean 'to point out, to particularize, to designate by words one thing from another.' ''

Adverting to the language of the charter, I find that the ordinance must specify, among other things, the *reasons* for the emergency. In *McKenna v. White,* 287 Mass 495, 192 NE 84, 85, where a statute required that a statement of the reason or reasons for the removal of civil service officers be given, the court held that the statement, " 'for the good of the service' '', was an inadequate statement of the reason or reasons therefor, saying: ''A statement of the reason or reasons for removal must be somewhat definite and detailed.''

In the case of *Joplin v. Ten Brook et al.,* 124 Or 36, 39, 42, 263 P 893, an ordinance of the city of Astoria was under consideration. An emergency clause was attached, based on the following: " 'the objects of this ordinance will be of great benefit to the people of the City of Astoria.' '' The charter of Astoria contained the following provision:

" 'An emergency ordinance may be enacted upon the day of its introduction, providing it shall contain the statement that an emergency exists, and specify the reason constituting such emergency.' ''

In nullifying the ordinance, we said:

"   *   *   * The mere fact that a law will be of great benefit states no urgent reason for its going into effect immediately, as every valid law or ordinance is presumed to be passed because of its prospective benefit to the community."

Likewise, every ordinance passed by a city under the police power, such as is the ordinance under consideration, presupposes a police problem, and the insertion in the emergency clause of the ordinance of "police problems", adds nothing to that which is already presumed.

It will be observed that the charter of the city of Portland goes much further than the charter of the city of Astoria by requiring the ordinance to "specify with distinctness the facts and reasons constituting such emergency.", while the Astoria charter merely requires the ordinance to "specify the reason constituting such emergency."

The principal involved in the instant case is one of paramount importance to the people of Oregon. They labored and pioneered the Home Rule amendment to the constitution. The electors of the city of Portland, in enacting the charter granting to them the right of referendum, placed certain safeguards in the charter. They permitted an emergency clause to be attached to an ordinance but only under certain specific conditions. I do not believe that such conditions were inserted to keep the city officials morally honest. The presumption is, of course, that official duty will be legally and properly performed. Such limitations were inserted for the benefit of the people and for the people alone. When an emergency clause is to be attached to an ordinance, the people want to know precisely the rea-

sons for the emergency and the facts supporting such reasons.

If the prevailing opinion is permitted to stand, the right to an ordinance referendum has been to all intents and purposes destroyed, and the Home Rule amendment to the constitution emasculated. Whether a case involves pinballs or pincushions, to prevent a referendum, it will only be necessary for the city fathers to insert willy-nilly in the emergency clause of an ordinance that the ordinance involves "police problems".

In my opinion, the charter in the case at bar has not been complied with.

For the above reasons, I dissent.